**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| TEIRRA BLACK, as parent and next friend of J.D. and J.A.D., minors, | ) ) ) |
| Plaintiff, | ) Case No. ) ) Judge |
| vs. | ) ) Magistrate Judge |
| TAMARA LITTLEJOHN, RENEE RYAN, LORIE GREEN, MS WHITEHAED, MS WILLAMSON, UKNOWN PRINCIPAL AT MEDGAR EVERS ELEMENTARY SCHOOL and the BOARD OF EDUCATION OF THE CITY OF CHICAGO, | ) ) JURY DEMAND ) ) ) |
| Defendants. | |

**COMPLAINT**

**NOW COMES** the Plaintiff, Teirra Black, as parent and next friend of minor children J.D. and J.A.D., through her counsel Erickson & Oppenheimer, Ltd., complaining against the Defendants, Tamara Littlejohn, Renee Ryan, Lorie Green, Ms. Williamson, Ms. Whitehead, and an unknown principal at Medgar Evers Elementary School, individually, and the Board of Education of the City of Chicago, as follows:

**INTRODUCTION**

1. On February 18, 2019, 11-year-old 4th grade special-needs student J.D. came home from yet another horrific day of bullying at Carter G. Woodson Elementary School and attempted to take his own life. With his and his mother's continued pleas for relief to teachers and administrators ignored, J.D. saw no other way to stop the pain than to go into his bedroom, close the door, tie a bed sheet around his neck and hang himself on a coat hook. His suicide attempt was the result of over a year of chronic bullying and violent conduct at the hands of teachers and students at Evers Elementary and then Woodson Elementary. J.D.'s act of ultimate desperation has resulted in tragic consequences for him and his family as he remains hospitalized and ventilator dependent after suffering severe and permanent anoxic brain injury and chronic respiratory failure.

2. J.D.'s suicide attempt followed the failure by school and Board officials to take any action to remedy the continuing bullying despite Plaintiff's repeated complaints to teachers, Woodson Elementary School principal Tamara Littlejohn, the unknown principal at Evers, the Board of Education of the City of Chicago and the Illinois State Board of Education. Instead of protecting J.D., officials at Woodson, Evers Elementary and the Board simply ignored his mother's desperate pleas to protect her young son.

3. The shocking conduct and deliberate indifference perpetrated in this case by CPS teachers and officials were not limited to J.D. Violent attacks and deliberate indifference by CPS teachers and administrators towards special needs students at Woodson and other Chicago public schools are not uncommon. Prior to J.D.'s suicide attempt, incidents of violence and aggression against special needs children occurred at Evers Elementary, Woodson Elementary and the South Shore Fine Arts Academy. J.D. was the victim of teacher bullying and physical abuse at Evers Elementary before seeking refuge at Woodson. On June 21, 2018, Woodson Elementary special needs teacher Nakita Brown plead guilty to the criminal charge of battery for strangling a 9-year-old Woodson special needs student and dragging him headfirst down a flight of stairs. On or about November 13, 2018, Dean of Students at South Shore Fine Arts Academy, Christopher Thomas was arrested for Aggravated Battery to a Child for strangling a 9-year-old special needs student at South Shore Fine Arts Academy. Despite knowledge of this pattern of aggressive behavior and neglect, Defendant Board and Defendant Principal Littlejohn failed to take any adequate action to train or supervise its employees in order to prevent incidents of aggressive behavior and neglect, like those which led to J.D.'s suicide attempt.

**JURISDICTION AND VENUE**

4. The jurisdiction of this Court is invoked pursuant to the Civil Rights Act, 42 U.S.C. §§ 1983 and 1988; 28 U.S.C. §§ 1331 and 1343(a); the Constitution of the United States, Title

II of the Americans with Disabilities Act (ADA), §504 of the Rehabilitation Act and the Individuals with Disabilities Education Act, § 615(f)(3)(E)(ii), 20 U.S.C.A. § 1415(f)(3)(E)(ii); 34 C.F.R. § 300.513(a)(2); and pendent jurisdiction as provided under 28 U.S.C. § 1367(a).

5. Venue is proper under 28 U.S.C. Section 1391 (b). All of the parties reside in this judicial district and the events described herein all occurred within this district.

## THE PARTIES

6. J.D. is an 11-year-old boy who, due to a diagnosed learning disability, was a special education student at Woodson Elementary School and Evers Elementary at all relevant times. He resides in Chicago, Illinois.

7. J.A.D. is the 9-year-old sister of J.D. and was a special education student at Woodson Elementary School at all relevant times. She resides in Chicago, Illinois.

8. Plaintiff Teirra Black is the mother of J.D. and J.A.D. She resides in Chicago, Illinois.

9. On information and belief, the Defendant Ms. Whitehead was at all relevant times a teacher at Evers Elementary School in the City of Chicago and an employee and agent of the Board of Education of the City of Chicago (hereinafter "Board") acting within her scope of employment and under color of law.

10. On information and belief, the Defendant unknown principal at Evers Elementary was at all relevant times the principal at Evers Elementary School in the City of Chicago and an employee and agent of the Board acting within her scope of employment and under color of law.

11. On information and belief, the Defendant Lorie Green was at all relevant times a teacher at Woodson Elementary School in the City of Chicago and an employee and agent of the Board acting within her scope of employment and under color of law.

12. On information and belief, the Defendant Ms. Williamson was at all relevant times a teacher at Woodson Elementary School in the City of Chicago and an employee and agent of the Board acting within her scope of employment and under color of law.

13. On information and belief, the Defendant Renee Ryan was at all relevant times a teacher at Woodson Elementary School in the City of Chicago and an employee and agent of the Board acting within her scope of employment and under color of law.

14. On information and belief, the Defendant Tamara Littlejohn was at all relevant times the principal at Woodson Elementary School in the City of Chicago and an employee and agent of the Board acting within her scope of employment and under color of law.

15. Defendant Board is a school system in Chicago, Illinois in charge of the management and operation of Woodson Elementary School located at or about 4414 S. Evans Ave. in Chicago, Illinois. The Board was at all relevant times the employer of Defendants Littlejohn, Green, Ryan, Williamson, Whitehead and the unknown principal at Evers.

## **FACTS**

16. On February 18, 2019, J.A.D. found her brother J.D. unresponsive and hanging from a coat hook with a sheet tied around his neck.

17. In the year and months preceding J.D.'s suicide attempt, he was the victim of physical violence, psychological abuse, bullying, harassment, and aggressive behavior at Evers and Woodson Elementary schools by both teachers and students.

18. J.D. was repeatedly called derogatory names by teachers and students. He was repeatedly called "stupid," "dumb," and "retarded" and joked that he would end up at a facility for students with mental disabilities.

19. Evers Elementary teacher Defendant Whitehead called him "dirty," "stupid," "nappy-headed," and asked him if his "brillo hair was the reason he couldn't read." Ms. Whitehead made the comments in front of the class who would laugh aloud at J.D.

20. In February of 2018, Ms. Whitehead hit J.D. causing injury. Plaintiff Teirra Black called police and filed a police report regarding the criminal conduct of Ms. Whitehead.

21. Teachers and security guards regularly called J.D. names in the presence of Evers student and parents of other Evers students.

22. As a result of this continued abuse by teachers and students at Evers Elementary, Plaintiff Teirra Black sought relief by transferring J.D. to Woodson Elementary.

23. In or about October of 2018, Defendant Renee Ryan grabbed J.D. by the back of his neck and struck him across the face.

24. In or about December of 2018, Defendant Ms. Williamson at Woodson Elementary punched, choked and shoved J.D.'s head against a wall, leaving marks on his chest and arms. These marks were shown to Defendant Littlejohn.

25. In or about December 2018, a group of students physically attacked J.D. in class, resulting in bruises to his body. Despite the obvious trauma suffered by J.D. Defendant Littlejohn recklessly and deliberately withheld this event from Plaintiff Teirra Black.

26. Defendants Green and Ryan at Woodson grabbed and scratched J.D. on at least two occasions within the year prior to his attempted suicide without just cause or provocation.

27. Due to the emotional and physical abuse suffered by J.D. while at school, Teirra Black repeatedly informed Defendant Littlejohn, various school staff and administrators, the Board of Education of the City of Chicago and finally the Illinois Board of Education. Despite these repeated pleas for help, Defendant Littlejohn, Defendant unknown principal at Evers and the Defendant Board failed to take any steps to protect J.D.

28. Defendant Principal Littlejohn's and Defendant unknown Evers principal's indifference to J.D.'s plight and his mother's pleas were both deliberate and willful.

29. Defendant Littlejohn failed to take any steps to stop and prevent the bullying experienced by J.D. Nor did she as a mandated reporter take appropriate steps to comply with Illinois law which requires that mandated reporters report abuse by any caretaker to DCFS.

30. Defendant unknown Evers principal failed to take any steps to stop and prevent the bullying experienced by J.D. Nor did she as a mandated reporter take appropriate steps to comply with Illinois law which requires that mandated reporters report abuse by any caretaker to DCFS.

31. Defendant Board and Defendant Littlejohn were aware of the continuing bullying and harassment suffered by J.D. at Woodson for over a year prior to the suicide attempt. Defendant Board and Defendant Littlejohn have known of the identity of the perpetrators of the harassment since that time and either took no corrective action or took insufficient action.

32. The harassment, bullying, physical attacks, and aggressive behavior perpetrated upon J.D. were offensive, unwanted, and interfered with his educational environment and deprived him of the educational opportunities and benefits provided by Defendant Board.

33. Plaintiff Teirra Black's daughter, J.A.D., was also the victim of bullying while at Woodson. J.A.D. was hit in the head, had her hair pulled and called names. On one occasion, a student pulled down J.A.D.'s pants in front of a group of students. Defendant Littlejohn failed to intervene in any way, despite having actual knowledge.

34. On information and belief, other parents of Woodson students have also complained about bullying at the school only to be met with inaction by school and Board officials.

35. Various studies have found a connection between bullying and suicide in young individuals. The phenomenon is sometimes colloquially referred to as "bullycide."

36. These studies have concluded that bullying is a significant contributor to suicidal ideation.[1]

---

[1] Suicidal ideation among suburban adolescents: The influence of school bullying and other mediating risk factors. J. Child Adolesc. Ment. Health, 2016 Oct; 28(3): 213-231.

37. Frequent physical assault is also linked to increased odds of suicidal ideation.[2]

38. A review of cross-sectional and longitudinal findings showed "an increased risk of suicidal ideation and (or) suicide attempts associated with bullying behavior."[3]

39. The Illinois General Assembly has found that a safe and civil school environment is necessary for students to learn and achieve and that bullying causes physical, psychological, and emotional harm to students and interferes with students' ability to learn and participate in school activities, and also that bullying has been linked to various forms of antisocial behavior. As a result, the Illinois legislature has enacted legislation regarding bullying prevention, codified in 105 ILCS 5/27-23.7.

40. The Board also recognizes the adverse and potentially tragic consequences of bullying, having enacted an Anti-Bullying Policy that was in effect at the time of J.D.'s suicide attempt. Despite this written policy, the Board had a *de facto* policy in place that allowed bullying and harassing behavior to flourish in its schools as set forth herein.

**WHEREFORE**, the Plaintiff prays for judgment against the Defendant for an award of reasonable compensatory and punitive damages, plus attorneys' fees and costs, and such other and additional relief that this Court deems equitable and just.

### COUNT I—EQUAL PROTECTION (Section 1983)
### (on behalf of J.D. and J.A.D. against all Defendants)

41. Plaintiff hereby incorporates all previous paragraphs as though fully set forth herein.

42. J.D. and J.A.D. have a clearly established right of equal access to all benefits and privileges of a public education and a right to be free from offensive harassment in school.

---

[2] Associations of childhood bullying victimization with lifetime suicidal behaviors among new U.S. Army soldiers. Depress Anxiety, 2017 Apr 3.

[3] The Association of Suicide and Bullying in Childhood to Young Adulthood: A Review of Cross-Sectional and Longitudinal Research Findings.

7 | P a g e

43. Defendants have, under color of law, deprived J.D. and J.A.D. of the rights, privileges, and immunities afforded to them by the United States Constitution, including the right to equal protection under the Fourteenth Amendment.

44. Defendants violated the equal protection rights of J.D. and J.A.D. when they treated students who were victims of bullying and aggressive behavior by students and teachers differently than students who were in accidents at school. While students who experience accidents at school are given appropriate and adequate medical treatment, and their parents are informed of the incident, students such as J.D. and J.A.D. who are victims of bullying and aggressive behavior are not protected, their medical needs are not taken seriously, and their parents are not informed of the incident or injury, thus depriving them of the ability to protect their children.

45. Defendants violated the equal protection rights of J.D. and J.A.D. when they acted with deliberate indifference to Plaintiff's complaints about the harassment and bullying of J.D. and J.A.D. which was directed at them because of their disabilities. On information and belief, complaints regarding students who are not special education students are treated differently than complaints of behavior against special education students.

46. The above actions and omissions by Defendants were deliberate and intentional and exhibit deliberate indifference to and/or reckless disregard for the constitutional rights of J.D., J.A.D., and other similarly situated students, all in violation of their constitutional rights.

47. There is no rational basis in treating the aforementioned groups in paragraphs 44 and 45 differently.

48. In the alternative, J.D. and J.A.D. were each a class of one: there was no rational basis to justify the unequal treatment he or she faced, regardless of their membership in a protected class.

49. As a direct and proximate consequence of the Defendants' conduct, J.D. and J.A.D. suffered damages, including without limitation violations of their constitutional rights,

chronic respiratory failure, anoxic brain injury, emotional anxiety, fear, pain and suffering, and monetary expense.

**WHEREFORE**, the Plaintiff prays for judgment against the Defendant for an award of reasonable compensatory and punitive damages, plus attorneys' fees and costs, and such other and additional relief that this Court deems equitable and just.

### COUNT II—TITLE II OF THE ADA
### (on behalf of J.D. and J.A.D. against Defendant Board)

50. Plaintiff hereby incorporates all previous paragraphs as though fully set forth herein.

51. The actions of the Defendants as set forth hereto constitute a violation of the Americans with Disabilities Act (hereinafter "ADA"), 42 U.S.C. § 12131, *et seq*.

52. Due to the status of J.D. and J.A.D. as special education students, J.D. and J.A.D. are each a "qualified individual with a disability" as defined in 42 U.S.C. § 12131.

53. Woodson Elementary School and Evers Elementary School, operated by Defendant Board, are "public entities" as defined in 42 U.S.C. § 12131(1) and receive federal financial assistance so as to be covered by the mandate of the ADA.

54. Woodson and Evers Elementary Schools provide a facility whose operation constitutes a program and services for ADA purposes.

55. Accordingly, pursuant to 42 U.S.C. § 12132, no qualified individual with a disability shall be denied the benefits of the services, programs, or activities of a public entity.

56. As the Board failed to adequately accommodate the disabilities of J.D. or J.A.D. or make necessary modifications in their environments, commensurate with their unique and individualized needs, and they were therefore denied such benefits due to their disabilities, the Board violated the rights of J.D. and J.A.D. pursuant to the ADA.

57. The harassment set forth herein was sufficiently severe and pervasive that it altered the conditions of J.D and J.A.D.'s education and created an abusive educational environment.

58. As set forth herein, the Defendants knew of the aggressive behavior experienced by J.D. and J.A.D. and were deliberately indifferent to their experiences their rights as students with disabilities.

59. As a direct and proximate consequence of the Defendant's conduct, J.D. and J.A.D. suffered damages, including without limitation violations of their constitutional rights, anoxic brain injury, chronic respiratory failure, emotional anxiety, fear, pain and suffering, and monetary expense.

**WHEREFORE**, the Plaintiff prays for judgment against the Defendant for an award of reasonable compensatory and punitive damages, plus attorneys' fees and costs, and such other and additional relief that this Court deems equitable and just.

### COUNT III—SECTION 504 OF THE REHABILITATION ACT
**(on behalf of J.D. and J.A.D. against Defendant Board)**

60. Plaintiff hereby incorporates all previous paragraphs as though fully set forth herein.

61. The actions of the Defendant as set forth hereto constitute a violation of the Rehabilitation Act, 29 U.S.C. § 794.

62. J.D. and J.A.D. are eligible disabled students and as such are entitled to a free appropriate public education from Defendant Board and an equal opportunity to benefit from the public services. 29 U.S.C. § 705(20)(B); 34 C.F.R. Part 104.

63. Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794 and its implementing regulations, require that each state that receives disbursements, including the state's political subdivisions such as local school districts, must ensure all students with disabilities are given appropriate and necessary accommodations, pursuant to federal law and rules. To the degree that a policy or practice hinders honest consideration of a disabled child's unique needs and fails to accommodate that child's disability and keep the student safe, it violates Section 504.

64. Defendants' failure to ensure J.D. and J.A.D.'s safety in an educational setting and allowance of a hostile learning environment contributed to violating the rights of J.D. and J.A.D. under Section 504, as well as federal rules and regulations promulgated pursuant thereto.

65. As set forth herein, the abuse directed at J.D. and J.A.D. were directed at them because of their disabilities.

66. The harassment set forth herein was sufficiently severe and pervasive that it altered the conditions of J.D. and J.A.D.'s education and created an abusive education environment.

67. As set forth herein, the Defendants knew of the aggressive behavior experienced by J.D. and J.A.D. and were deliberately indifferent to their experiences their rights as students with disabilities. J.D. and J.A.D. were denied their education and non-academic benefits and services by reason of their disabilities in violation of Section 504. 29 U.S.C. § 794(a).

68. As a direct and proximate consequence of the Defendant's conduct, J.D. and J.A.D. suffered damages, including without limitation violations of their constitutional rights, anoxic brain injury, chronic respiratory failure, emotional anxiety, fear, pain and suffering, and monetary expense.

**WHEREFORE**, the Plaintiff prays for judgment against the Defendant for an award of reasonable compensatory and punitive damages, plus attorneys' fees and costs, and such other and additional relief that this Court deems equitable and just.

### COUNT IV—SUBSTANTIVE DUE PROCESS (Section 1983)
**(on behalf of J.D. and J.A.D. against all Defendants)**

69. Plaintiff hereby incorporates all previous paragraphs as though fully set forth herein.

70. That J.D. and J.A.D. have clearly established right to equal access to all benefits and privileges of a public education and a right to be free from the illegal practices and policies set forth herein.

71. Defendants have, under color of law, deprived J.D. and J.A.D. of the rights, privileges, and immunities afforded to them by the United States Constitution, including the right to due process under the Fourteenth Amendment, and specifically the right to be free from affirmative actions directly increasing J.D. or J.A.D's vulnerability or otherwise placing them in danger and taking away from Plaintiff her ability to protect them.

72. Defendants acted with deliberate indifference when they ignored Plaintiff's complaints and put J.D.'s life at risk and caused him to suffer gravely before his suicide attempt. Defendants acted with deliberate indifference when they concealed from Plaintiff the danger J.D. was in at school.

73. The actions of the Defendants, as described above, were arbitrary and capricious and shock the conscience.

**WHEREFORE**, the Plaintiff prays for judgment against the Defendant for an award of reasonable compensatory and punitive damages, plus attorneys' fees and costs, and such other and additional relief that this Court deems equitable and just.

### COUNT V—EXCESSIVE FORCE (Section 1983)
**(on behalf of J.D. against Defendants Ryan, Green, Whitehead, and Williamson)**

74. Plaintiff hereby incorporates all previous paragraphs as though fully set forth herein.

75. The actions of Defendants Ryan, Green, Whitehead and Williamson as set forth hereto constitute excessive force against Plaintiff J.D., thus violating his rights under the United States Constitution and 42 U.S.C. Section 1983.

76. Said actions of Defendant Ryan, Green, Whitehead and Williamson were intentional, willful and wanton and committed with reckless disregard for J.D.'s rights.

77. Said actions of the Defendant were objectively unreasonable under the circumstances.

78. As a direct and proximate consequence of the Defendant's conduct, J.D. suffered damages, including without limitation violations of his constitutional rights, anoxic brain

injury, chronic respiratory failure, emotional anxiety, fear, pain and suffering, and monetary expense.

**WHEREFORE**, the Plaintiff prays for judgment against the Defendant for an award of reasonable compensatory and punitive damages, plus attorneys' fees and costs, and such other and additional relief that this Court deems equitable and just.

**COUNT VI— MONELL (Section 1983)**
**(against Defendant Board)**

79. Plaintiff hereby incorporates all previous paragraphs as though fully set forth herein.

80. At the time of the incidents giving rise to this complaint and for a period of time prior thereto, Defendant Board had notice of a widespread practice under which students, particularly special education students such as J.D. and J.A.D., were routinely subjected to harassment, aggressive behavior or neglect by either employees or students. For instance:

   a. On March 1, 2016, 9-year-old special education student N.C. was physically attacked by his special education teacher, Nikita Brown. He was strangled in the classroom and then dragged by Brown headfirst down the stairs. The incident was captured on video, and Brown was ultimately plead guilty to the battery as a result of her criminal, violent conduct. Prior to this incident, Littlejohn had received multiple complaints about Brown's aggressive behavior towards both students and staff including their explicit concerns that she posed a danger to their safety, but failed to take the necessary corrective action to address the situation. Nor did Littlejohn report the incident with Brown and N.C. to DCFS as required under the law.

   b. On September 28, 2018, 9-year-old special education student M.S. was physically attacked and choked by Dean of Students Christopher Thomas at South Shore Fine Arts Academy. Criminal charges against Thomas are pending.

      c. On November 5, 2018, 7-year-old special education student D.A., who has Down syndrome, wandered away from Woodson and walked into a nearby citizen's home. When the citizen returned D.A. to the school, school staff appeared unconcerned.

81. Defendant Board had *de facto* practices, policies, and procedures in place that failed to require or enforce the reporting of physical or verbal abuse of special education/disabled students by Board employees and students; failed to correctly train its personnel regarding disabilities and required accommodations; and failed to properly supervise and monitor employees and school areas such as classrooms.

82. Defendant Board had *de facto* practices, policies, and procedures in place whereby it failed to provide or ensure the appropriate implementation of an adequate policy to guide defendants, school officials, and teachers responding to bullying, violence, and student-on-student and teacher-on-student aggression such as what happened to students like J.D. and J.A.D.

83. Defendant Board had *de facto* practices, policies, and procedures in place whereby it failed to adequately train and supervise defendants, school officials, and teachers in their interactions with students, including without limitation how to respond to incidents like those experienced by students like J.D. and J.A.D.

84. Defendant Board had *de facto* practices, policies, and procedures in place whereby it failed to conduct a meaningful investigation into the actions of Defendants and other school officials alleged to have committed misconduct, thus ratifying their actions as official policy and causing the Board to be liable for their constitutional violations.

85. Defendant Board had *de facto* practices, policies, and procedures in place whereby it failed to conduct meaningful investigations into allegations of bullying or aggressive behavior or to adequately discipline or reprimand the offenders and ensure an appropriate modification in the environment for victims of bullying.

86. Defendant Board's rules, regulations, customs, policies, practices, usages, procedures, inadequate training and supervision, and ratification of the Defendants' actions, were all inadequate and unreasonable and were the proximate cause of J.D. and J.A.D.'s injuries and the moving force behind the constitutional deprivations suffered by J.D. and J.A.D.

**WHEREFORE**, pursuant to *Monell v. N.Y. Dep't of Soc. Servs.,* 436 U.S. 658 (1978), Plaintiff demands judgment against Defendant the Chicago Board of Education for an award of reasonable compensatory damages, plus attorney's fees and costs and any other relief this Court deems just.

### COUNT VII—WILLFUL AND WANTON SUPERVISION (state law claim)
### (on behalf of J.D. and J.A.D. against Defendants Littlejohn, unknown principal at Evers, and Board)

87. Plaintiff hereby incorporates all previous paragraphs as though fully set forth herein.

88. At all relevant times, the Board, Defendant Littlejohn and Defendant unknown Evers principal owed a duty to Plaintiff, including without limitation to:

   a. Provide for students' safety, which includes safeguarding students from harmful conduct that may be undertaken by teachers;

   b. Exercise reasonable care in supervising employees to ensure that they did not pose a danger or create an unreasonable risk of harm to other individuals that they were heaving properly during their encounters with students and staff,

   c. Provide students, including those with disabilities, a learning environment that is not hostile,

   d. Properly address allegations of harassment and/or discrimination, and

   e. Prevent discrimination on the basis of disability.

89. As set forth hereto, said actions of the Defendants were intentional, willful and wanton and committed with reckless disregard for Plaintiff's rights.

90. Said actions of the Defendants were objectively unreasonable under the circumstances.

91. As a direct and proximate consequence of the Defendants' conduct, the Plaintiff suffered damages, including without limitation violations of his constitutional rights, emotional anxiety, fear, pain and suffering, and monetary expense.

**WHEREFORE**, the Plaintiff prays for judgment against the Defendants for an award of reasonable compensatory and punitive damages, plus attorneys' fees and costs, and such other and additional relief that this Court deems equitable and just.

### COUNT VIII—INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (state law claim)
### (on behalf of J.D., J.A.D. and Plaintiff against all Defendants)

92. Plaintiff hereby incorporates all previous paragraphs as though fully set forth herein.

93. As set forth hereto, Defendants committed one or more of the following extreme and outrageous acts against J.D. and J.A.D.:

   a. Teacher-on-student verbal and physical abuse,

   b. Refusal to stop and the encouragement of student-on-student harassment,

   c. Refusal to stop teacher-on-student and student-on-student harassment after being notified of incidents by Plaintiff and asked by Plaintiff to intervene.

94. Defendants' extreme and outrageous conduct was done with the intent to cause severe emotional distress to Plaintiff or with reckless disregard of the high likelihood of causing severe emotional distress.

95. Defendants' extreme and outrageous conduct cause Plaintiff to suffer severe emotional distress.

96. As a direct and proximate consequence of the Defendants' conduct, J.D. and J.A.D. suffered damages, including without limitation violations of his constitutional rights, emotional anxiety, fear, pain and suffering, and monetary expense.

**WHEREFORE**, the Plaintiff prays for judgment against the Defendants for an award of reasonable compensatory and punitive damages, plus costs, and such other and additional relief that this Court deems equitable and just.

### COUNT IX — BATTERY (state law claim)
### (on behalf of J.D. against Defendants Green, Ryan, Whitehead, Williamson)

97. Plaintiff hereby incorporates all previous paragraphs as though fully set forth herein.

98. As set forth hereto, the Defendants Lori Green and Renee Ryan, Ms. Whitehead and Ms. Williamson offensively touched J.D. intentionally, with malice, and without justification or consent, thus constituting battery under Illinois law.

99. As a direct and proximate result of the Defendant's actions, J.D. suffered bodily harm.

**WHEREFORE**, the Plaintiff prays for judgment against the Defendant for an award of reasonable compensatory and punitive damages, plus costs, and such other and additional relief that this Court deems equitable and just.

### COUNT X—ILLINOIS HATE CRIME (state law claim)
### (on behalf of J.D. and J.A.D. against Defendants Ryan, Green, Whitehead and Williamson)

100. Plaintiff hereby incorporates all previous paragraphs as though fully set forth herein.

101. "A person commits a hate crime when, by virtue of actual or perceived…. disability…of another individual or group of individuals, regardless of the existence of any other motivating factors, he commits assault, battery, aggravated assault, intimidation…or disorderly conduct…". 720 ILCS 5/12-7.1(a).

102. As set forth herein, the verbal and physical abuse directed at J.D. and J.A.D. were because of their disability.

103. As a direct and proximate consequence of the Defendant's conduct, the Plaintiff suffered damages, including without limitation violations of his constitutional rights, emotional anxiety, fear, pain and suffering, and monetary expense.

**WHEREFORE**, the Plaintiff prays for judgment against the Defendant for an award of reasonable compensatory and punitive damages, plus costs, and such other and additional relief that this Court deems equitable and just.

## COUNT XI—INDEMNIFICATION

104. Plaintiff hereby incorporates all previous paragraphs as though fully set forth herein.

105. At all relevant times, Defendant Board was the employer of the individual Defendants.

106. The individual Defendants committed the acts alleged above under the color of law and in the scope of their employment as employees of the Board.

107. In Illinois, public entities are directed to pay for any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

108. As a proximate cause of the unlawful acts of the individual Defendants, which occurred within the scope of their employment, J.D. and J.A.D. were injured.

**WHEREFORE**, should any of the individual Defendants be found liable on one or more of the federal claims set forth above, Plaintiff demands, pursuant to 745 ILCS 10/9-102, that Defendant Board be found liable for any compensatory judgment Plaintiff obtains against said individual Defendant(s), plus attorneys' fees and costs awarded and such other and additional relief that this Court deems equitable and just.

## COUNT XII—*RESPONDEAT SUPERIOR*

109. Plaintiff hereby incorporates all previous paragraphs as though fully set forth herein.

110. In committing the acts alleged in the preceding paragraphs, the individual Defendants were agents of the Board and were acting at all relevant times within the scope of their employment and under color of law.

111. Defendant Board is liable as principal for all torts committed by its agents.

**WHEREFORE**, should any of the individual Defendants be found liable on one or more of the state claims set forth above, Plaintiff demands that, pursuant to *respondeat superior*, Defendant Board be found liable for any compensatory judgment Plaintiff obtains against said Defendant(s), as well as costs awarded.

## JURY DEMAND

The Plaintiff requests a trial by jury.

## NOTICE OF ASSIGNMENT

Please be advised that all rights relating to attorneys' fees have been assigned to counsel.

Respectfully submitted,

/s/ Jon Erickson

Erickson & Oppenheimer, Ltd.
223 West Jackson Boulevard
Suite 200
Chicago, Illinois 60606
Telephone: (312) 327-3370
Email: jon@eolawus.com