# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| TEIRRA BLACK, as parent and next friend of | ) | |
| J.D. and J.A.D., minors, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 19 C 2585 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| TAMARA LITTLEJOHN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

School should be a safe space for children that is free from bullying and physical abuse. That is what Teirra Black, a parent and next friend of J.D. and J.A.D., believed when she sent her children to two public grammar schools in Chicago. However, once Black's son almost succeeded in attempting to take his own life after multiple episodes of bullying and violence at the hands of teachers, staff, and students that went unaddressed, she filed this suit against Defendants Tamara Littlejohn, Renee Ryan, Lorie Green, Ms. Whitehead, Ms. Williamson[1], an unknown Principal at Medgar Evers Elementary School ("Principal at Evers"), and the Board of Education of the City of Chicago ("the Board"), alleging they failed to protect her children from bullying and abuse. Black alleges violations of 42 U.S.C. § 1983, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, the Illinois hate crime statute, 720 Ill. Comp. Stat. 5/12-7.1, and other state common law claims. Defendants have moved to dismiss all of the claims against them. Black has voluntarily withdrawn her claims on behalf of J.A.D., as well as certain requests for punitive

---

[1] Whitehead and Williamson's first names are unknown.

damages.  Because Black has sufficiently pleaded her remaining claims on behalf of J.D., she

may proceed with these claims.[2]

## BACKGROUND[3]

Black is the mother of J.D., a special education elementary school student with a

diagnosed learning disability.  His younger sister, J.A.D., is also a special education student.  At

school, J.D. was the victim of bullying.  Other students and teachers regularly called J.D.

"stupid," "dumb," or "retarded," and joked that he would end up at a facility for people with

mental disabilities.

From 2017 to 2018, J.D. attended Medgar Evers Elementary School ("Evers") in

Chicago, Illinois.  Teachers and security guards regularly called J.D. names in front of other

students and parents of students.  Whitehead, a teacher at Evers, called J.D. "dirty," "stupid,"

"nappy-headed," and asked him if his "brillo hair was the reason he couldn't read."  Doc. 1 ¶ 19.

"Whitehead made the comments in front of the class who would laugh aloud at J.D."  *Id.*  In

February 2018, Whitehead hit J.D. and injured him.  Black filed a police report against her.

Black subsequently asked Evers to transfer J.D. to Carter G. Woodson Elementary

School ("Woodson"), also in Chicago, because of the abuse at Evers.  Teachers and students at

Woodson, however, continued to bully him.  On at least two occasions, Green and Ryan, both

teachers at Woodson, grabbed and scratched J.D.  On another occasion, in October 2018, Ryan

grabbed J.D. by the back of his neck and hit him across the face.  In December, Williamson, also

a teacher at Woodson, punched and choked J.D., and shoved his head against a wall, leaving

---

[2] The Court admonishes Black for filing a response brief in opposition to Defendants' motion to dismiss that was more than twice the permissible page limit without seeking permission to do so first.  In the future, the Court will strike any material that does not comport with the Court's rules.

[3] The facts in the background section are taken from Black's complaint and are presumed true for the purpose of resolving Defendants' motion to dismiss.  *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011); *Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO v. Exelon Corp.*, 495 F.3d 779, 782 (7th Cir. 2007).

marks across his chest and arms.  At some point, J.D. showed the marks to Littlejohn, the principal at Woodson.  Around the same time, a group of students physically attacked J.D. in one of his classes, causing bruises.  Littlejohn did not inform Black of this incident.

Other students also suffered bullying in Chicago public schools.  Students bullied J.A.D. while she attended Woodson by pulling her hair, calling her names, and, on at least one occasion, hitting her in the head.  On another occasion, a student pulled J.A.D.'s pants down in front of other students.  On June 21, 2018, a teacher at Woodson pleaded guilty to battery after strangling a nine-year-old special needs student and dragging him headfirst down a flight of stairs.  On November 13, 2018, police arrested the Dean of Students at South Shore Fine Arts Academy for strangling a nine-year-old special needs student.

Black repeatedly complained to school staff and administrators, including the Principal at Evers, Littlejohn, the Board, and the Illinois Board of Education, about the abuse.  Other parents also complained of bullying at Woodson.  Although the Board has an Anti-Bullying policy, and Littlejohn and the Board knew the identity of the individuals who were abusing J.D., they took little or no action to protect him.  Neither did the Principal at Evers take any steps to protect J.D.  Although the Principal at Evers and Littlejohn are mandated reporters, they did not report the abuse to the Department of Child and Family Services ("DCFS").

On February 18, 2019, J.D., then eleven years old, came home from school, tied a bed sheet around his neck, and hung himself on a coat hook in his bedroom.  When J.A.D. found her brother, he was unresponsive.  J.D. remains hospitalized after suffering severe and permanent brain injuries and chronic respiratory failure.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

### I.  Punitive Damages and Claims on Behalf of J.A.D.

Defendants argue, and Black concedes, that she cannot seek punitive damages as part of her intentional infliction of emotional distress ("IIED") claim or as part of her claims against the Board. Black also voluntarily asks the Court to dismiss all claims on behalf of J.A.D. The Court, therefore, strikes Black's claim for punitive damages with respect to her IIED claim and with respect to her remaining claims against the Board. The Court also dismisses all claims on behalf of J.A.D.

### II.  Section 1983 Claims

#### A.  Equal Protection

Black offers three different theories of discrimination under the Equal Protection Clause: that Defendants discriminated against J.D. based on his status as a disabled person, a victim of

bullying, and as a "class of one." *See Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

"The gravamen of equal protection lies not in the fact of deprivation of a right but in the invidious classification of persons aggrieved by the state's action." *Nabozny v. Podlesny*, 92 F.3d 446, 453 (7th Cir. 1996) (citing *Shango v. Jurich*, 681 F.2d 1091, 1104 (7th Cir. 1982)). To state a claim, a plaintiff must typically allege that "the defendants acted with a nefarious discriminatory purpose and discriminated against him based on his membership in a definable class." *Id.* (citation omitted). When, as here, the discrimination does not implicate a fundamental right or a suspect classification, a plaintiff must also "allege facts sufficient to overcome the presumption of rationality that applies to government classifications." *Wroblewski v. City of Washburn*, 965 F.2d 452, 460 (7th Cir. 1992); *Discovery House, Inc. v. Consol. City of Indianapolis*, 319 F.3d 277, 282 (7th Cir. 2003) (rational basis review applies to classifications based on disability (citing *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 367 (2001))). The same principles apply when "a powerful public official pick[s] on a person out of sheer vindictiveness." *Esmail v. Macrane*, 53 F.3d 176, 178 (7th Cir. 1995); *see also Engquist v. Or. Dep't of Agr.*, 553 U.S. 591, 602 (2008) ("Recognition of the class-of-one theory of equal protection on the facts in *Olech* was not so much a departure from the principle that the Equal Protection Clause is concerned with arbitrary government classification, as it was an application of that principle. . . . Thus, when it appears that an individual is being singled out by the government, the specter of arbitrary classification is fairly raised[.]").[4] To state a "class of one"

---

[4] The standard for proving a class of one equal protection claim is unsettled in the Seventh Circuit. Under the more demanding standard, a plaintiff must prove the state actor intentionally treated the plaintiff differently from others similarly situated and acted out of "totally illegitimate animus." *Del Marcelle v. Brown Cty. Corp.*, 680 F.3d 887, 912 (7th Cir. 2012). Under the less demanding standard, the plaintiff need only show the discriminatory action lacked a rational basis. *Id.* At this stage of the proceeding, Black must only plead facts suggesting Defendants discriminated against J.D. for no rational reason. *See Olech*, 528 U.S. at 564; *Frederickson v. Landeros*, 943 F.3d 1054, 1060 (7th Cir. 2019) ("[S]ome things are established. . . . *Olech* . . . defines the inquiry we must conduct[.]").

claim, the plaintiff must allege "she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Olech*, 528 U.S. at 564; *Miller v. City of Monona*, 784 F.3d 1113, 1120 (7th Cir. 2015) ("[A]ll it takes to defeat a class-of-one claim is a *conceivable* rational basis for the difference in treatment." (quoting *D.B. ex rel. Kurtis B. v. Kopp*, 725 F.3d 681, 686 (7th Cir. 2013))).

Defendants argue that Black has failed to plead any of her theories of discrimination. With respect to the disability discrimination, Defendants contend that she has not plausibly alleged that the discrimination was on account of J.D.'s disability. But "[i]t does not take much to allege discrimination." *Wigginton v. Bank of Am. Corp.*, 770 F.3d 521, 522 (7th Cir. 2014). "[S]pecific facts are not necessary." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) (citing *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)). Even so, Black makes specific factual allegations regarding how the school staff treated J.D. She alleges that they called him names ("stupid," "dumb"), choked, punched, and scratched him, and that they treated complaints of bullying against special education students differently than complaints concerning other students: "While students who experience accidents at school are given appropriate and adequate medical treatment, and their parents are informed of the incident, students, such as J.D. and J.A.D., who are victims of bullying and aggressive behavior are not protected, their medical needs are not taken seriously, and their parents are not informed of the incident or injury[.]" Doc. 1 ¶ 44.[5] This is enough to allege discrimination on account of J.D.'s disability. *See Citibank*, 614 F.3d at 405 ("Swanson's complaint identifies the type of discrimination that she

---

[5] Black also alleges that other parents of students complained about bullying at Evers, but the school failed to take any action. It is unclear whether these were also parents of special education students. If not, Black's complaint would undermine her own claim that the school treated complaints of bullying aginst students with disabilities differently than complaints of bullying against other students. Defendants do not argue this point so neither does the Court.

thinks occurs (racial), by whom . . . and when . . . . This is all that she needed to put in the complaint.").

Defendants argue that the comparison to students who experienced accidents at school is still too conclusory to support the inference that J.D. was treated differently than other students. But Black need not even "identify specific examples of similarly situated persons in [her] complaint[ ]." *Miller*, 784 F.3d at 1120 (quoting *Capra v. Cook County Bd. of Review*, 733 F.3d 705, 717 (7th Cir. 2013)); *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 830 (7th Cir. 2014) ("The plaintiff is not required to identify similarly situated comparators at the pleading stage."). That is particularly the case where the allegations themselves establish that the discrimination was arbitrary. *See Swanson v. City of Chetek*, 719 F.3d 780, 785 (7th Cir. 2013) (where plaintiff "has identified his specific harasser, provided a plausible motive and detailed a series of alleged actions by [defendant] that appear illegitimate on their face" it is not necessary to plead a similarly-situated comparator because the hostility is "readily-apparent"). In this case, there is no conceivable rational basis for the alleged verbal and physical abuse, leading to the inference that school staff discriminated against J.D. on account of his disability or, alternatively, for no legitimate purpose at all. This is enough to plausibly conclude Defendants intentionally treated J.D. differently on account of his disability or out of "sheer vindictiveness." *Esmail*, 53 F.3d at 178.

With respect to Black's third theory, that Defendants discriminated against J.D. because he was a victim of bullying, Defendants argue that the facts do not plausibly support this inference. But before reaching this issue, it is not clear that J.D.'s status as "a victim of bullying" constitutes a definable class. Defining J.D.'s membership according to the same discriminatory conduct of which he complains obscures the distinction between the

discrimination at issue and the class definition. *See McDorman v. Smith*, 437 F. Supp. 2d 768, 776 (N.D. Ill. 2006) ("Plaintiff's attempt to shoe-horn her tort claims into a § 1983 equal protection action by defining a class based on her status as a victim of alleged tortious conduct is [ ] impermissible."). Because neither party has adequately briefed this issue, however, the Court will allow Black's theory to remain and Defendants may re-visit the issue at summary judgment.

Next, Defendants argue that Black's class of one claim must still fail because they are state actors entrusted to exercise inherently subjective and discretionary decision making that presupposes differential treatment. *See Engquist*, 553 U.S. at 603 ("There are some forms of state action, however, which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments. . . . In such situations, allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise."). Court have held that class of one equal protection claims do not apply in certain contexts such as public employment, *id.* at 605, or in particular cases involving law enforcement, *Hanes v. Zurick*, 578 F.3d 491, 495–96 (7th Cir. 2009). But *Hanes* explained that whether a state actor has immunity depends on the context of the particular case. *Id.* Law enforcement officers, for example, sometimes operate under certain constitutional constraints that narrow an officer's discretion. *Id.* They need probable cause to arrest someone or a reasonable suspicion to perform a stop. *Terry v. Ohio*, 392 U.S. 1, 21, 24 (1968). An officer that "repeatedly arrests someone solely because of malice," however, is not immune to suit because the officer "is not exercising discretion and is not weighing the factors relevant to the officer's duties to the public." *Hanes*, 578 F.3d at 496. Similar to the example given in *Hanes*, the allegations involving name-calling and assaultive behavior do not involve discretionary choices that warrant immunity. At most, the Defendants in administrative

positions—the Principal at Evers, Littlejohn, and the Board—could arguably fall on the "inherently discretionary" side of the dichotomy. *Engquist*, 553 U.S. at 612. The Court can decide this issue at summary judgment when the parties present a better developed factual record. *See Eilenfeldt v. United C.U.S.D. #304 Bd. of Educ.*, 30 F. Supp. 3d 780, 791 (C.D. Ill. 2014) ("The Court is not willing to extend the existing case-law on [immunity], which currently encompasses only the public-employment and law-enforcement contexts, based only on the pleadings."). Black, thus, may proceed with her equal protection claims.

### B. Substantive Due Process

Defendants argue that Black has failed to make out a substantive due process claim. The Due Process Clause protects an individual's right to life, liberty, or property as against the State. U.S. Const. amend. XIV, §1. Students have a property interest in a K-12 public education. *See Doe v. Purdue Univ.*, 928 F.3d 652, 660 (7th Cir. 2019) (citing *Goss v. Lopez*, 419 U.S. 565, 573–74 (1975) ("High school students (and, for that matter, elementary school students) have a property interest in their public education because state law entitles them to receive one."). The Due Process Clause does not, however, "impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means." *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989); *T.E. v. Grindle*, 599 F.3d 583, 589 (7th Cir. 2010) ("Generally, state actors do not have a due process obligation to protect citizens from private violence." (citing *Winnebago Cty.*, 489 U.S. at 195)). There are two exceptions: 1) when the State has a "special relationship" with an individual by virtue of holding them in custody, and 2) when the State affirmatively creates a danger or renders an individual more vulnerable to a danger than they otherwise would have been, also called the "State-created danger exception." *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015).

Because schools do not have a special relationship with students, *see J.O. v. Alton Cmty. Unit Sch. Dist. 11*, 909 F.2d 267, 272–73 (7th Cir. 1990) ("Schoolchildren are not like mental patients and prisoners such that the state has an affirmative duty to protect them."), the parties analyze the sufficiency of Black's claims under the State-created danger theory.[6] Under this exception, Black must establish that: 1) Defendants, by their affirmative acts, created or increased the danger that J.D. faced; 2) Defendants' failure to protect J.D. was the proximate cause of his injury; and 3) Defendant's conduct shocks the conscience. *D.S.*, 799 F.3d at 798. Defendants argue that they are not liable because under *D.S.*, a school's inaction or inadequate response to school bullying is not enough to state a substantive due process claim. *Id.* at 798–99. But Black has alleged more than mere inaction. Black alleges that Whitehead called J.D. dirty and stupid in front of a class of laughing students, that students *and* teachers regularly mocked J.D., and that "[t]eachers and security guards regularly called J.D. names in the presence of Evers student[s] and parents of other Evers students," Doc. 1 ¶ 21. These allegations establish what the plaintiff in *D.S.* could not show: "that her teachers and coaches instigated, created, or increased the bullying that she experienced at school." 799 F.3d at 798. If the administrators knew about the abusive conduct by the teachers and failed to take corrective action, as Black plausibly alleges, they can also be held liable. *See Grindle*, 599 F.3d at 588 ("[S]upervisors can violate the Constitution themselves if they 'know about the [unconstitutional] conduct and facilitate it,

---

[6] It is not clear that the Court need even proceed this far because Black alleges that the teachers themselves bullied her son. This seems to take Black's claim out of the State-created danger theory altogether because she alleges that State actors directly deprived J.D. of his constitutional rights. *See Gray v. Univ. of Col. Hosp. Auth.*, 672 F.3d 909, 928 (10th Cir. 2012) ("Courts simply need not indulge [the state-created danger] legal fiction where a state actor, rather than a private individual, is directly responsible for causing the harm. This is because the state actor directly responsible for the deprivation of life, liberty, or property may be held personally liable under § 1983.").

approve it, condone it, or turn a blind eye for fear of what they might see.'" (alteration in original) (quoting *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988))).

Defendants also argue that the alleged conduct does not "shock the conscience." But the Court cannot say that the alleged facts are categorically insufficient in this respect. Whether the conduct is sufficiently severe is a "fact-bound inquiry" that, in this case, is better resolved at trial or summary judgment. *King ex rel. King v. E. St. Louis Sch. Dist. 189*, 496 F.3d 812, 818 (7th Cir. 2007); *Eilenfeldt*, 30 F. Supp. 3d at 790 ("Whether conduct 'shocks the conscience,' however, is a fact-bound inquiry that, in this case, is not appropriately decided at the motion-to-dismiss stage." (citing *King*, 496 F.3d at 818)).

### C. Personal Liability

Defendants argue Black's due process and equal protections claims must still fail because Black has not sufficiently pleaded each Defendant's personal involvement and her individual claims refer to the "Defendants" collectively. *See Knight v. Wiseman*, 590 F.3d 458, 462–63 (7th Cir. 2009) ("[T]o recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right." (citation omitted)). The Court construes Defendants' argument to center on the portions of the complaint that assert her § 1983 claims against "Defendants" collectively, rather than on the narrative portion that outlines specific factual allegations. The narrative portion plainly alleges that each of the Defendant Teachers was directly involved in discriminatory conduct. Black alleges that Whitehead made fun of J.D. by calling him names, and that Green, Ryan, Whitehead, and Williamson physically assaulted him. She further alleges that Littlejohn, the Principal at Evers, and the Board, were aware of the student-to-student and teacher-to-student harassment because Black repeatedly complained about it but they failed to take any corrective action. *See Grindle*, 599 F.3d at 588;

*Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009) ("Liability depends on each defendant's knowledge and actions, not on the knowledge or actions of persons they supervise.").

Black need only identify how each Defendant's conduct connects to the alleged constitutional violation, which she has done. *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983) ("A causal connection, or an affirmative link, between the misconduct complained of and the official sued is necessary."). The narrative portion of her complaint provides the necessary link. Black's collective references to Defendants are not an obstacle at this stage of the proceeding. *See v. Strunk*, No. 06-2064, 2006 WL 2916819, at *11 (C.D. Ill. Oct. 10, 2006) ("It is of no significance to the adequacy of her legal claims that Plaintiff chose not to specifically name the individual defendant(s) in connection with any given claim. She has adequately identified each individual defendant and alleged their personal involvement in the alleged violations.").

### D. Excessive Force

Defendants allege that Black has not stated a claim for excessive force against the Defendant Teachers because she has not alleged that the force caused severe injuries or was grossly disproportionate under the circumstances. But, "[i]njury is not an element of an excessive-force claim; rather, it is evidence of the degree of force imposed and the reasonableness of that force." *McAllister v. Price*, 615 F.3d 877, 882 (7th Cir. 2010). Black need only allege that the seizure was unreasonable under the circumstances. *Wallace by Wallace v. Batavia Sch. Dist. 101*, 68 F.3d 1010, 1014 (7th Cir. 1995) ("[I]n the context of a public school, a teacher or administrator who seizes a student does so in violation of the Fourth Amendment only when the restriction of liberty is unreasonable under the circumstances then

existing and apparent.").[7]  The allegations of choking, punching, and hitting are beyond anything justifiable on disciplinary grounds.  *See Spraggins as next friend of N.C. v. Brown*, No. 16 C 06629, 2019 WL 4749978, at \*6 (N.D. Ill. Sept. 30, 2019) ("Choking a fourth-grade student, shoving him against a table, and dragging the student headfirst down two flights of stairs is clearly beyond the pale of reasonable discipline.").  Black has alleged enough to state a claim against Green, Ryan, Whitehead, and Williamson.

### E.    Municipal Liability

Defendants argue that even if the underlying § 1983 claims are well pleaded, Black has not established a *Monell* claim against the Board.  *Monell v. Department of Social Services of City of New York* held that municipalities are not liable for § 1983 claims based on *respondeat superior*.  436 U.S. 658, 691 (1978).  Black may state a claim by alleging: 1) an express policy that, when enforced, causes a constitutional deprivation; 2) a common practice that is not explicitly authorized but is so widespread and well-settled that it constitutes a custom or usage with the force of law; or 3) a person with final policy making authority caused the constitutional injury.  *Lawrence v. Kenosha Cty.*, 391 F.3d 837, 844 (7th Cir. 2004).  The policy or practice "must be the 'direct cause' or 'moving force' behind the constitutional violation."  *Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004) (citation omitted).

Defendants argue that Black has only alleged three specific instances of harassment of special education students and that this is not enough to establish a policy or practice.  But the

---

[7] It is not clear whether this is always the appropriate standard against which to evaluate an excessive force claim involving school officials because courts have considered it under both the Fourth and Fourteenth Amendments.  *See B.B. v. Appleton Area Sch. Dist.*, No. 12-C-115, 2013 WL 3972250, at \*11 (E.D. Wis. July 31, 2013) ("In this court's view, *Wallace's* rejection of the plaintiff's substantive due process claim was limited to the facts of that case and was not intended as a general rejection of substantive due process as the rubric under which excessive force claims against school officials are to be analyzed.  Indeed, most of the circuits have held that corporal punishment of students by public school officials may violate substantive due process.").

Seventh Circuit has reminded courts not to apply a "heightened pleading standard" to *Monell* claims. *White v. City of Chicago*, 829 F.3d 837, 844 (7th Cir. 2016) (quoting *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993)). *Monell* claims may proceed "even with conclusory allegations that a policy or practice existed, so long as facts are pled that put the defendants on proper notice of the alleged wrongdoing," *Armour v. Country Club Hills*, No. 11 C 5029, 2014 WL 63850, at *6 (N.D. Ill. Jan. 8, 2014) (quoting *Riley v. Cty. of Cook*, 682 F. Supp. 2d 856, 861 (N.D. Ill. 2010)), and that allow the Court to draw a reasonable inference that the Board maintained a discriminatory policy, custom or practice, *see McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). Black does not need to allege a specific number of incidents to sufficiently state a claim. *See Lanigan v. Vill. of E. Hazel Crest, Ill.*, 110 F.3d 467, 480 (7th Cir. 1997) (finding complaint largely consisting of "boilerplate allegations" sufficient and plaintiff "should be allowed to develop a record suitable for summary judgment"). Here, the three alleged instances offered to support Black's *Monell* claim are enough to put the Board on notice of its alleged wrongdoing and to raise an inference that the Board had a *de facto* policy and practice of failing to protect special education students against abuse.

## III.    ADA and Rehabilitation Act

### A.    Sufficiency of Claims

Black alleges the Board violated Title II of the ADA and § 504 of the Rehabilitation Act, "both of which 'prohibit discrimination against the disabled.'" *H.P. by & through W.P. v. Naperville Cmty. Unit Sch. Dist. #203*, 910 F.3d 957, 960 (7th Cir. 2018) (citation omitted). Defendants argue that Black has failed to make out a claim. To state a claim under Title II of the ADA, Black must allege that: 1) J.D. was disabled under the statute; 2) he was denied "the

benefit of services, programs, or activities of a public entity or [ ] subjected to discrimination by any such entity;" and 3) that he was discriminated against "by reason of" his disability. 42 U.S.C. § 12132, *see A.H. by Holzmueller v. Ill. High Sch. Ass'n*, 881 F.3d 587, 592 (7th Cir. 2018). Section 504 of the Rehabilitation Act is "very similar." *Reed v. Columbia St. Mary's Hosp.*, 915 F.3d 473, 484 (7th Cir. 2019). Both statutes require proof of but-for causation, *A.H.*, 881 F.3d at 593, "but the Rehabilitation Act prohibits discrimination only if it is 'solely by reason of' a person's disability. The ADA permits mixed-motive claims." *Reed*, 915 F.3d at 484. Nonetheless, "courts construe and apply them in a consistent manner." *A.H.*, 881 F.3d at 592 (citation omitted); *see Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015) (claims under Title II and Section 504 are "functionally identical"). Black can establish discrimination in one of three ways: "(1) the defendant intentionally acted on the basis of the disability; (2) the defendant refused to provide a reasonable modification; or (3) the defendant's rule disproportionally impacts disabled people." *Id.* at 593 (citing *Washington v. Ind. High Sch. Athletic Ass'n, Inc.*, 181 F.3d 840, 847 (7th Cir. 1999)).

There is likely enough overlap with Black's equal protection claim—alleging Defendants intentionally discriminated against J.D. because of his disability—to find that Black has stated a claim against the Board under the ADA and Rehabilitation Act on the same grounds. Nonetheless, Defendants argue that Black has not established that J.D. suffered from a disability, that he was bullied because of his disability, or that the bullying had a negative effect on his education. The Court considers these arguments in turn.[8]

---

[8] Both parties agree that in the case of bullying, the harassment must be "so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school." *See Doe v. Galster*, 768 F.3d 611, 617 (7th Cir. 2014) (quoting *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 650 (1999)). *Doe*, however, explicitly states that these are the elements for establishing a claim involving peer harassment. *Id.; see also Werth v. Bd. of Dirs. of Pub. Schs. of City of Milwaukee*, 472 F. Supp. 2d 1113, 1127 (E.D. Wis. 2007) (in the context of "peer-on-peer

In a disability discrimination case, the plaintiff normally "must allege what exactly makes him disabled." *Freeman v. Metro. Water Reclamation Dist. of Greater Chicago*, 927 F.3d 961, 965 (7th Cir. 2019). The ADA defines a disability as 1) a "physical or mental impairment that substantially limits one or more major life activities," 2) "a record of such an impairment," or 3) "being regarded as having such an impairment." 42 U.S.C. § 12102(1). Black alleges that J.D. has a diagnosed learning disability and the schools placed him in special education classes. "A learning disability that substantially limits a person's ability to learn, think, and concentrate (activities of central importance to daily life) is precisely the type of disability the ADA has always sought to protect." *Cordova v. Univ. of Notre Dame Du Lac*, 936 F. Supp. 2d 1003, 1009 (N.D. Ind. 2013); *see also DePaoli v. Abbott Labs.*, 140 F.3d 668, 671 (7th Cir. 1998) (citing EEOC regulations implementing the ADA defining mental impairment as any mental disorder including "specific learning disabilities"). Whether J.D.'s disability meets this definition is necessarily a fact-intensive inquiry. *Merry v. A. Sulka & Co.*, 953 F. Supp. 922, 925–26 (N.D. Ill. 1997) ("[T]he determination of whether or not a person has an ADA 'disability' is to be made on an individualized case-by-case basis." (citing *Byrne v. Bd. of Educ.*, 979 F.2d 560, 565 (7th Cir. 1992))). Black has alleged enough at this stage. Defendants may revisit the issue on a motion for summary judgment if discovery reveals that J.D.'s learning disability does not fall under the purview of the ADA and Rehabilitation Act.

Black has also sufficiently alleged that school officials discriminated against J.D. because of his disability for the reasons previously stated with respect to her equal protection claim.

---

§ 504 and ADA claims," plaintiff must establish: 1) they have a disability, 2) harassment was because of the disability, 3) "harassment was sufficiently severe or pervasive that it altered the condition of his or her education and created an abusive educational environment," 4) defendant knew about the harassment, and 5) defendant was deliberately indifferent to the harassment). Because Black alleges that the teachers also bullied J.D., it is not clear she need plead anything more than the elements recited in *A.H.*, 881 F.3d at 592. Still, Black has sufficiently stated a claim under either inquiry.

Beyond some of Black's more general allegations, the alleged name-calling is sufficient to raise an inference that the harassment was on account of J.D.'s disability. *See Bowe v. Eau Claire Area Sch. Dist.*, No. 16-cv-746-jdp, 2017 WL 1458822, at *2 (W.D. Wis. Apr. 24, 2017) (where classmates stated that plaintiff was stupid and had mental deficiencies "the content of this verbal abuse sufficiently pleads a link between the harassment and Bowe's disability"). Black does not need to allege more than a causal link between the two. *Id.* ("[A] plaintiff can satisfy [causation] by pleading a 'link' between the harassment and his peers' knowledge of his disability or resentment of his accommodations.").

Black has also established that the bullying severely affected J.D.'s education. She alleges that J.D. was subject to physical violence, *see Gabrielle M. v. Park Forest-Chicago Heights, Ill. Sch. Dist. 163*, 315 F.3d 817, 823 (7th Cir. 2003) ("Examples of a negative impact on access to education may include . . . physical violence."), which may have been particularly detrimental because it was at the hands of teachers, *see Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 653 (1999) (explaining that, in the context of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*, "the relationship between the harasser and the victim necessarily affects the extent to which the misconduct can be said to breach Title IX's guarantee of equal access to educational benefits," with teacher-student harassment more likely to violate the statute). Black alleges that ultimately the harassment drove J.D. to attempt to take his own life. *See C.S. v. Couch*, 843 F. Supp. 2d 894, 907 (N.D. Ind. 2011) ("If the plaintiff also experienced some kind of emotional trauma as a result of the harassment, like suicidal thoughts or a diagnosis of depression, in addition to the more tangible effects such as dropping grades or increased absenteeism, then such trauma can contribute to a conclusion that the severity and pervasiveness requirement [of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.*] is

satisfied.").  Black has alleged enough to state an intentional discrimination claim under the ADA and Rehabilitation Act.

The complaint alleges that Defendants also failed to accommodate J.D.'s disabilities. Defendants argue that the Court must dismiss this claim because J.D. never requested an accommodation.  Black appears to concede this point because she does not offer any argument in response.  Thus, the Court dismisses Black's failure to accommodate claim.

## B.        Exhaustion of Administrative Remedies

Defendants argue that Black cannot proceed on her ADA and Rehabilitation Act claims because she did not exhaust her administrative remedies under the Individuals with Disabilities in Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*  The IDEA requires a plaintiff to exhaust available administrative remedies before filing suit under the statute.  *Jamie S. v. Milwaukee Pub. Schs.*, 668 F.3d 481, 494 (7th Cir. 2012) (citing 20 U.S.C. § 1415).  The exhaustion requirement extends to claims seeking relief "under the ADA, the Rehabilitation Act, or similar laws" when the sought-after relief is also available under the IDEA.  *Fry v. Napoleon Cmty. Schs.*, 580 U.S. ----, 137 S. Ct. 743, 752 (2017) (clarifying that, for IDEA exhaustion to apply to other statutory claims, "a suit must seek relief for the denial of a [free appropriate public education]").  Administrative exhaustion is also an affirmative defense that a plaintiff need not address in her pleadings.  *Mosely v. Bd. of Educ. of City of Chicago*, 434 F.3d 527, 533 (7th Cir. 2006) (failure to exhaust remedies under IDEA is an affirmative defense and plaintiff "had no obligation to allege facts negating an affirmative defense in her complaint").  Defendants argue that Black has conceded that she failed to exhaust her claim, but it is not clear Black has actually done so in her briefings.  "There is nothing on the face of her complaint that compels a

conclusion that she failed to exhaust." *Id.* Therefore, the Court can revisit these arguments at summary judgment. *Id.*

## IV. State Law Claims

### A. IIED

Defendants argue that Black has not sufficiently pleaded her IIED claim. To state a claim, Black must plead: 1) Defendants' conduct was extreme and outrageous; 2) Defendants either intended to inflict severe emotional distress or knew of the high probability that their conduct would do so; and 3) Defendants' conduct actually caused severe emotional distress. *Lifton v. Bd. of Educ. of City of Chicago*, 416 F.3d 571, 579 (7th Cir. 2005) (citing *Thomas v. Fuerst*, 345 Ill. App. 3d 929, 936 (2004)). The second and third prongs do not seem to be in dispute. Defendants mainly argue that "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" are not sufficiently outrageous to state a claim. *McGrath v. Fahey*, 126 Ill. 2d 78, 86 (1988) (citing Second Restatement of Torts § 46 (1965)). To be considered extreme and outrageous, the conduct "must be so extreme as to go beyond all possible bounds of decency, and to be regarded as intolerable in a civilized community." *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 438 (7th Cir. 2009) (citing *Kolegas v. Heftel Broad. Corp.*, 154 Ill. 2d 1, 21 (1992)). Similar to whether Black's constitutional allegations are sufficiently conscience-shocking, whether her claims are sufficiently outrageous is better determined on a more developed record. *Ulm v. Mem'l Med. Ctr.*, 2012 IL App (4th) 110421, ¶ 39 ("Whether certain conduct can be characterized as extreme and outrageous so as to support a cause of action for the tort of [IIED] necessarily depends on the facts of each case."). Here, Black has alleged enough to make her claims plausible, particularly because they involve acts by teachers. *Id.* ¶ 41 ("Whether the defendant enjoys a position of authority over the plaintiff may affect the

determination of whether the defendant's conduct toward the plaintiff is extreme and outrageous."); *McGrath*, 126 Ill. 2d 78, 87 (1988) (citing "school authorities" as an example of "the many types of individuals who may be positioned to exercise power or authority over a plaintiff").

### B. Illinois Tort Immunity Act

Defendants argue that the Illinois Tort Immunity Act ("ITIA") bars Black's IIED and willful and wanton supervision claims against the Principal at Evers, Littlejohn, and the Board. 745 Ill. Comp. Stat. 10/2-101 *et seq.* Defendants argue that the ITIA similarly bars Black's IIED claim against Green, Ryan, Whitehead, and Williamson to the extent Black alleges they failed to stop bullying by other students. Although immunity is an affirmative defense that Black need not have anticipated in the complaint, the Court may dismiss a claim where the plaintiff has pleaded herself out of court. *See Van Meter v. Darien Park Dist.*, 207 Ill. 2d 359, 377 (2003). Defendants point to § 2-201 of the ITIA, which provides that "a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused," and § 2-109, which grants public entities immunity for the acts or omissions of its employees "where the employee is not liable." 745 Ill. Comp. Stat. 10/2-109, 201; *see Monson v. City of Danville*, 2018 IL 122486, ¶ 16 ("Read together, these sections immunize a public entity from liability for the discretionary acts or omissions of its employees."). A policy decision, for immunity purposes, requires the municipality to balance competing interests and make judgment calls as to which course of action best serves those interests. *Id.* ¶ 30. Discretionary acts are those unique to a particular public office, while ministerial acts, which do not warrant immunity, are those performed on a given state of facts in

a prescribed manner, under a mandate of legal authority, and without any reference to discretion. *Snyder v. Curran Twp.*, 167 Ill. 2d 466, 474 (1995). "Whether an act or omission is classified as discretionary within the meaning of § 2-201 escapes precise formulation and should be made on a case-by-case basis in light of the particular facts and circumstances." *Monson*, 2018 IL 122486, ¶ 29. For § 2-201 immunity to apply, Defendants must establish that their acts or omissions amounted to both a policy determination and an exercise of discretion. *Van Meter*, 207 Ill. 2d at 375, 379.

At this point, the Court cannot definitively say that Defendants' alleged acts or omissions were categorically discretionary policy determinations. Defendants argue that courts have routinely dismissed complaints at the motion to dismiss stage, but the cases Defendants cite did not apply the same provisions of the ITIA, *see Cheatham v. City of Chicago*, No. 16-cv-3015, 2016 WL 6217091, at *2 (N.D. Ill. Oct. 25, 2016) (dismissing negligent infliction of emotional distress claim under § 2-202's grant of immunity to public officials "in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct"); *Remblake v. Cty. of Will*, No. 10 C 617, 2010 WL 3732146, at *2 (N.D. Ill. Sept. 16, 2010) (same); *Thomas v. Sheahan*, 499 F. Supp. 2d 1062, 1099 (N.D. Ill. 2007) (dismissing claim against supervisory defendants pursuant to § 2-204 prohibition of liability on the basis of *respondeat superior*); expressly declined to dismiss claims that involved factual determinations, *see Tyagi v. Sheldon*, No. 16 C 11236, 2017 WL 4130532, at *20 (N.D. Ill. Sept. 18, 2017) (dismissing negligent infliction of emotional distress claim under § 2-202 and declining to dismiss IIED claims because application of immunity "depend[ed] on the specific facts asserted by the plaintiffs"); *Balsamo v. One Source, N. Reg'l Commuter R.R. Corp.*, No. 04 C 6172, 2005 WL 396303, at *5 (N.D. Ill. Feb. 16, 2005) (dismissing municipal corporation under § 2-107's

grant of immunity to public entities for libelous or slanderous conduct and declining to dismiss individual defendant under § 2-201); *Atlas v. City of N. Chicago*, No. 03 C 4814, 2004 WL 816456, at *3 (N.D. Ill. Mar. 12, 2004) ("At this stage in the litigation, we cannot say that Defendants' actions, as pled by Atlas, were made in the determination of policy or the exercise of discretion."); or involved factual determinations resembling a motion for summary judgment, *see Hascall v. Williams*, 2013 IL App (4th) 121131, ¶¶ 16, 29 (dismissing claims involving bullying under 735 Ill. Comp. Stat. 5/2-619(a)(9) based on affidavits).

### C. Preemption Under IHRA

Defendants argue that the Illinois Human Rights Act ("IHRA") preempts Black's hate crime claim against Defendant Teachers. 775 Ill. Comp. Stat. 5/8-111(c) ("Except as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act."). Courts have interpreted this provision to preempt state law claims that are "inextricably linked" to a civil rights violation under the statute. *Maksimovic v. Tsogalis*, 177 Ill. 2d 511, 517 (1997). To proceed with her hate crime claim, Black must show "a basis for imposing liability on defendants independent of the [IHRA], i.e., without reference to the legal duties created by the Act." *Blount v. Stroud*, 232 Ill. 2d 302, 315 (2009).

The Illinois hate crime statute specifically provides that "[a] person commits hate crime when, by reason of the actual or perceived . . . physical or mental disability . . . he or she commits assault, battery . . . ." 720 Ill. Comp. Stat. 5/12-7.1 This an independent legal basis for Black's hate crime claim. *See McCaleb v. Pizza Hut of Am., Inc.*, 28 F. Supp. 2d 1043, 1049 (N.D. Ill. 1998) (finding no preemption of hate crime claim because "there is an independent

legal basis for the claim, which is the Hate Crimes Act itself"). Therefore, the IHRA does not preempt Black's hate crime claim.

### D. Statute of Limitations

Finally, Defendants argue that Black's IIED and battery claims against Whitehead are barred by the ITIA's one-year statute of limitations. Black responds that the statute of limitations is tolled for minors under 745 Ill. Comp. Stat. 10/8-101. *See Gilbert ex rel. James v. Ross*, No. 09-cv-2339, 2010 WL 145789, at *4 (N.D. Ill. Jan. 11, 2010) ("[W]ith claims involving minors, the one year statute of limitations found in the Tort Immunity Act is tolled by virtue of 735 [Ill. Comp. Stat.] 5/13-211."). Defendants do not respond to this point. Because the statute of limitations is typically an affirmative defense, the Court need not decide whether it applies at this stage unless the deficiency is apparent on the face of the complaint. *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005). Because it appears that Black's claims are not time-barred under § 8-101, the Court does not find that the statute of limitations requires dismissal of Black's state law claims against Whitehead at this time.

### CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Defendants' motion to dismiss [9]. The Court dismisses Black's claims on behalf of J.A.D. The Court strikes all requests for punitive damages from Black's IIED claim and from her claims against the Board. And the Court dismisses Black's failure to accommodate claim. Black may proceed with her remaining claims.

Dated: January 28, 2020

SARA L. ELLIS
United States District Judge