UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TEIRRA BLACK, as parent and next friend of J.D., a minor, ) ) ) Plaintiff, ) ) v. ) ) TAMARA LITTLEJOHN, RENEE RYAN, ) LORIE GREEN, YOLANDA WHITEHEAD, ) CHERJUAN WILLIAMSON, CAROLINE ) ELLIS, and BOARD OF EDUCATION OF ) THE CITY OF CHICAGO,[1] ) ) Defendants. ) | No. 19 C 2585<br><br>Judge Sara L. Ellis |

## OPINION AND ORDER

Plaintiff Teirra Black, as parent and next friend of her minor son, J.D., asserts various federal and state law claims against Defendants Board of Education of the City of Chicago (the "Board"), Tamara Littlejohn, Renee Ryan, Lorie Green, Yolanda Whitehead, Cherjuan Williamson, and Caroline Ellis. One of these claims is a state-law claim for spoliation of video evidence against all Defendants. Defendants now move to dismiss this claim under Federal Rule of Civil Procedure 12(b)(6).[2] Because Black has not alleged that the destruction of the video evidence at issue will cause her to be unable to prove any of her other claims, the Court grants Defendants' motion to dismiss Black's spoliation claim [70]. The Court dismisses Black's

---

[1] Black's second amended complaint, which is the operative complaint, identifies "Ms. Whitehead" and "Ms. Williamson" as defendants. Defendants' motion to dismiss identifies these individuals as Yolanda Whitehead and Cherjuan Williamson, respectively. The Court uses these names in the case caption.

[2] Defendants' briefing does not identify Ellis as a defendant who has joined the motion to dismiss. However, the title of the motion reflected in the docket indicates that Ellis joined the motion, and she joined Defendants' answer to Black's second amended complaint, in which Defendants did not answer the spoliation allegations due to the pending motion to dismiss. Thus, the Court considers Ellis to have joined the motion to dismiss at issue.

spoliation claim without prejudice, and Black has twenty-one days to amend her spoliation claim if she can do so in accordance with this opinion and Federal Rule of Civil Procedure 11.

## BACKGROUND[3]

On February 18, 2019, J.D., an eleven-year-old special-needs student who has a learning disability, tried to kill himself. J.D.'s suicide attempt caused "severe and permanent anoxic brain injury and chronic respiratory failure," and J.D. remains hospitalized and dependent on a ventilator. Doc. 69 ¶ 1. J.D. attempted to take his own life after enduring more than a year of bullying, harassment, and violent behavior from teachers and students at the elementary schools he attended. In 2018, J.D. was a student at Medgar Evers Elementary School ("Evers"), where teachers and students bullied and harassed him. As a result of this abuse, J.D. transferred to Woodson Elementary School ("Woodson"). Unfortunately, the abuse continued.

The operative complaint sets forth many troubling instances of alleged abuse, but only one instance is relevant to Defendants' motion to dismiss. On December 17, 2018, Williamson, a teacher at Woodson, "punched, choked[,] and shoved J.D.'s head against a wall, leaving marks on his chest and arms." *Id.* ¶¶ 23, 111. Surveillance cameras at Woodson captured the attack on video. Littlejohn, Woodson's principal, also saw the marks on J.D.'s chest and arms.

The Board owns and possesses the video cameras at Woodson and the footage the cameras record. The Board also knew that Woodson's surveillance cameras recorded Williamson's attack on J.D. After Black submitted a complaint about the attack to the Board, the Board ordered Littlejohn to investigate the complaint and, in particular, review surveillance video. On or before December 21, 2018, Littlejohn located and reviewed the video camera footage of the December 17 attack (the "December 17 Video"). Employees of the Board and all

---

[3] In recounting the relevant background, the Court has accepted as true all well-pleaded factual allegations from Black's second amended complaint and drawn all reasonable inferences from those allegations in her favor. *See Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016).

the other Individual Defendants (Ryan, Green, Whitehead, Williamson, and Ellis)[4] reviewed the December 17 Video as well.

After viewing the December 17 Video, Littlejohn immediately segregated and stored the footage "because she was aware that it was material evidence relevant" to a potential investigation by the Department of Children and Family Services ("DCFS"), a potential investigation by the Board, a potential criminal case against Williamson, and a potential lawsuit. *Id.* ¶ 123. She also segregated and stored the December 17 Video for J.D.'s benefit, e.g., so that it could be used (1) "in the DCFS investigation that was or should have been initiated to protect J.D.'s welfare" and (2) in the Chicago Police Department's criminal investigation into Williamson's conduct. *Id.* ¶¶ 124–25. Littlejohn contacted DCFS about the attack. Moreover, on January 7, 2019, at Black's request, Chicago police officers interviewed Black, Littlejohn, Williamson, and several security guards about the December 17 attack.

The Board has a policy that requires video evidence related to allegations of child endangerment or child abuse to be preserved for investigation purposes and so the evidence can be tendered to law enforcement. Moreover, "[w]hen litigation is pending or anticipated, the Board requires video evidence to be retained for thirty [] days after the closure of a case." *Id.* ¶ 117. At some point, however, at least one Defendant destroyed the December 17 Video.[5]

---

[4] Ryan and Green were teachers at Woodson. Whitehead was a teacher at Evers. Ellis was the principal of Evers.

[5] In their reply brief, Defendants assert that the December 17 Video was automatically overwritten on January 16, 2019. The Court does not consider this assertion in ruling on Defendants' Rule 12(b)(6) motion because it would require the Court to convert the motion into a motion for summary judgment. *See* Fed. R. Civ. P. 12(d); *Loeb Indus., Inc. v. Sumitomo Corp.*, 306 F.3d 469, 479 (7th Cir. 2002) ("[I]f the district court wishes to consider material outside the pleadings in ruling on a motion to dismiss, it must treat the motion as one for summary judgment and provide each party notice and an opportunity to submit affidavits or other additional forms of proof."); *see also Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806–07 (7th Cir. 2020) (noting that a defense that "drew on materials outside the complaint [] was not appropriate for a Rule 12(b)(6) motion").

Black filed suit in April 2019. In September 2020, she filed an amended complaint in which she first asserted a state-law spoliation claim against all Defendants. After Defendants moved to dismiss the spoliation claim, Black requested an opportunity to further amend her complaint to add facts relevant to the claim. The Court granted Black's request, and she filed a second amended complaint.[6] Not satisfied with Black's amendment to her spoliation claim, Defendants again move to dismiss the claim under Rule 12(b)(6).

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak*, 810 F.3d at 480–81. To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

Both sides agree that Illinois law governs Black's spoliation claim. A spoliation of evidence claim in Illinois is "not a separate, new tort, but a species of negligence." *Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 608 (7th Cir. 2016). As such, a plaintiff must plead the traditional four elements of negligence to state a spoliation claim: "a duty to

---

[6] Because the Court allowed Black to file a second amended complaint, it denies Defendants' October 3, 2020 motion to dismiss [52] as moot.

4

preserve the evidence; breach of that duty by loss of the evidence; that the loss proximately caused the plaintiff's inability to prove his underlying claim; and actual damages as a result." *Id.* (citing *Boyd v. Travelers Ins. Co.*, 166 Ill. 2d 188, 194–95 (1995), and *Martin v. Keeley & Sons, Inc.*, 2012 IL 113270, ¶ 26).

Defendants' motion challenges the duty and causation elements of Black's spoliation claim. Because Black's failure to sufficiently allege causation requires dismissal of her claim against all Defendants, the Court addresses that element first. Nonetheless, because the Court is dismissing Black's claim without prejudice and with leave to amend, the Court also addresses the parties' arguments regarding the duty element to provide guidance for any future pleading.

**I.    Causation**

Defendants argue that Black has not alleged any facts "to suggest that she cannot prove the underlying lawsuit without the" video footage. Doc. 70 at 6. This argument goes to the causation element of a spoliation claim. *See Schaefer*, 839 F.3d at 610 (explaining that causation requires the plaintiff "to prove that the loss of the evidence would cause him to lose the underlying case"). Black did not respond to this argument in her opposition to Defendants' motion to dismiss. By failing to do so, Black has effectively conceded that she has not sufficiently alleged causation. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) (a party waives an argument "by not responding to alleged deficiencies in a motion to dismiss"); *Grayson v. City of Aurora*, 157 F. Supp. 3d 725, 748 (N.D. Ill. 2016) ("[Plaintiff] failed to address the Defendants' challenge to his ability to prove the third element of his spoliation claim and has accordingly waived any argument.").

In any event, Black does not plead sufficient facts to support the causation element of her spoliation claim. To adequately plead causation, Black must allege facts showing (1) that the

5

destruction of the December 17 Video will cause her to lose her underlying case and (2) that if the December 17 Video had not been destroyed, she "would have a 'reasonable probability' of winning." *See Schaefer*, 839 F.3d at 610–11; *Boyd*, 166 Ill. 2d at 196 & n.2. Black's second amended complaint contains no factual allegations addressing either requirement. At best, Black alleges that the December 17 Video is "material evidence" supporting her claims in this action and she pleads, in the alternative, that the loss of this evidence "proximately caused her inability to prove her underlying claims." Doc. 69 ¶¶ 139–40. But simply labeling the video evidence as "material" does not address the probabilities of Black losing her case without the evidence or winning her case with the evidence. And the "proximate cause" allegation is simply a "formulaic recitation" of an element of a spoliation claim that does not suffice for purposes of a motion to dismiss. *See Twombly*, 550 U.S. at 555.

In sum, Black has not set forth factual allegations demonstrating causation, which is a required element of her spoliation claim. The Court, therefore, dismisses Black's spoliation claim as to all Defendants on this basis. *See Denton v. Ne. Ill. Reg'l Commuter R.R. Corp.*, No. 02 C 2220, 2004 WL 1005790, at *4 (N.D. Ill. Apr. 26, 2004) ("Because Plaintiffs have failed to allege proximate cause, Plaintiffs' claim for spoliation would not survive a motion to dismiss.").

## II. Duty to Preserve Evidence

In Illinois, there is "no general duty to preserve evidence." *Schaefer*, 839 F.3d at 609. Even so, a duty to preserve evidence will arise "if two conditions are satisfied": (1) "a 'relationship' condition" and (2) "a 'foreseeability' condition." *Id.*; *see also Dardeen v. Kuehling*, 213 Ill. 2d 329, 336 (2004) (explaining that the Illinois Supreme Court has "articulated a two-prong test for determining when there is a duty to preserve evidence"). The threshold question is whether a "relationship" exists, which requires an "agreement, contract, statute,

special circumstance, or voluntary undertaking" establishing the duty to preserve evidence. *Schaefer*, 839 F.3d at 609 (quoting *Dardeen*, 213 Ill. 2d at 336). If so, the plaintiff must then satisfy the "foreseeability" condition by showing that "a reasonable person should have foreseen that the evidence was material to a potential civil action." *Id.* (quoting *Dardeen*, 213 Ill. 2d at 336).

Defendants argue that Black has not alleged a relationship that created a duty to preserve the December 17 Video.[7] Black counters that this duty "arose through special circumstances and a voluntary undertaking." Doc. 72 at 2. Defendants also argue that Black has not alleged that Whitehead, Ellis, Ryan, or Green had a duty to preserve the December 17 Video. Black, in response, contends that this argument improperly requires the Court to determine questions of fact. The Court addresses each set of arguments in turn.

### A. Special Circumstances

"Illinois courts have not precisely defined" what constitutes a "special circumstance" that gives rise to a duty to preserve evidence. *Martin*, 2012 IL 113270, ¶ 39. But the defendant's mere possession and control of evidence is not enough to impose a duty, nor is the possibility that the defendant will become a litigant. *Schaefer*, 839 F.3d at 609. By contrast, a plaintiff's request to preserve evidence or a defendant's segregation of evidence for the plaintiff's benefit have been "recognized as special circumstances." *Id.*; *Martin*, 2012 IL 113270, ¶ 45.

Black contends that special circumstances created a duty to preserve evidence here because she alleges that, immediately after reviewing the December 17 Video, Littlejohn segregated and stored the video footage for J.D.'s benefit. Specifically, Black alleges that Littlejohn segregated and stored the December 17 Video because it was material evidence that

---

[7] Defendants do not seek dismissal based on the "foreseeability" condition, so the Court says nothing more about it.

7

could be relevant to potential investigations by DCFS and the Board, a potential criminal case against Williamson, and a potential lawsuit, and the segregation and storage for use in potential DCFS and criminal investigations was for J.D.'s benefit. These allegations, which the Court must take as true for purposes of Defendants' motion, reflect that a defendant (Littlejohn) segregated evidence (the December 17 Video) for the plaintiff's benefit in connection with a future investigation or lawsuit. This constitutes "special circumstances." *See Schaefer*, 839 F.3d at 609; *Martin*, 2012 IL 113270, ¶ 45; *cf. Mohr v. Weather Tech*, No. 17 C 4451, 2018 WL 3313006, at *2 (N.D. Ill. July 5, 2018) (the plaintiff did not allege special circumstances where she failed to allege that the defendant set aside the items on her desk "to preserve evidence for future investigation or litigation").

Defendants' attempts to avoid this determination are unavailing. First, Defendants ask the Court to disregard Black's allegations about Littlejohn's segregation and storage of the December 17 Video because they are "inconceivable" given the record. Doc. 70 at 5 & n.1 (citing *Atkins v. City of Chicago*, 631 F.3d 823, 830 (7th Cir. 2011)); Doc. 73 at 1 (same). The "inconceivable" standard that *Atkins* discussed allows a court to "reject[] factual allegations in a complaint out of hand," and it applies to situations where a plaintiff raises an "essentially fictitious" claim that makes outlandish allegations, such as allegations that the government removed the plaintiff's face and implanted a computer chip into his skull or that the United States and China are conspiring to infect people with mind-reading and mental torture devices. *See Atkins*, 631 F.3d at 830. But Black's allegations that Littlejohn segregated and stored the December 17 Video are nothing like these types of allegations, so *Atkins*' discussion of inconceivable allegations has no application here.

8

What Defendants really want the Court to do is disregard the segregation allegations (as well as other allegations) because the allegations purportedly lack "sufficient evidentiary support." Doc. 70 at 5 n.1, 6 n.2, 7 n.3; Doc. 73 at 1–2. But Black does not need to provide evidentiary support for her allegations at the Rule 12(b)(6) stage.[8] *See Drager v. Vill. of Bellwood*, 969 F. Supp. 2d 971, 984 (N.D. Ill. 2013) (explaining that the plaintiff "need not 'prove,' 'substantiate' or 'establish' any allegations" at the motion to dismiss stage). Moreover, in resolving Defendants' Rule 12(b)(6) motion, the Court does not evaluate whether Black's allegations are unsupported or contradicted by the evidentiary record, as that is an evaluation reserved for a summary judgment motion. *See* Fed. R. Civ. P. 12(d); *Rutherford v. Judge & Dolph Ltd.*, 707 F.3d 710, 713–14 (7th Cir. 2013) (finding that the district court erred in considering evidence that was not part of the pleadings in ruling on motions to dismiss without converting them into motions for summary judgment); *see also Gibson*, 910 F.2d at 1520 ("The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits." (citation omitted)).

Second, the district court opinions upon which Defendants rely—*Gregorio v. Yellow Transportation, Inc.*, No. 08 C 6257, 2009 WL 3681698 (N.D. Ill. Nov. 2, 2009), and *Shelvy v. Wal-Mart Stores, Inc.*, No. 11 CV 9176, 2013 WL 251427 (N.D. Ill. Jan. 23, 2013)—do not compel a different result. Both cases are readily distinguishable because unlike Black, the party asserting spoliation in each case did not allege that someone segregated the video footage at issue so that the video could later be used for the party's benefit. *Gregorio*, 2009 WL 3681698, at *2–3; *Shelvy*, 2013 WL 251427, at *4. What is more, *Shelvy* does not establish a "limited exception" where a spoliation claim involving video footage can survive a motion to dismiss

---

[8] That said, Black is obligated to only make factual allegations that "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3).

9

*only* if the defendant (1) knows that a lawsuit is pending or imminent and (2) segregates and preserves some relevant video footage while destroying other footage that is potentially most helpful to the plaintiff. Doc. 70 at 5; *see also* Doc. 73 at 3 (faulting Black for not "rais[ing] the *Shelvy* standard in her response"). *Shelvy* does not establish a "standard" that binds this Court in any way, *see Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011); *Beezley v. Fenix Parts, Inc.*, 328 F.R.D. 198, 204 n.2 (N.D. Ill. 2018), and, at any rate, *Shelvy* does not establish the multi-prong standard that Defendants put forth. True, the *Shelvy* court noted, among other things, that the plaintiff did not allege that the defendant segregated the footage knowing that a lawsuit was pending or imminent or that the defendant selectively deleted footage to gain an advantage in pending litigation before concluding that the plaintiff did not adequately allege special circumstances that gave rise to a duty to preserve evidence. 2013 WL 251427, at *3–4. But nothing in the *Shelvy* court's listing of allegations that the plaintiff did not make created a test that requires a plaintiff to make *all* these allegations to survive a motion to dismiss. Accordingly, Black has sufficiently alleged special circumstances that gave rise to a duty to preserve the December 17 Video.

    **B.**    **Voluntary Undertaking**

Black also argues that a voluntary undertaking created a duty to preserve the December 17 Video. "A voluntary undertaking requires a showing of affirmative conduct by the defendant evincing defendant's intent to voluntarily assume a duty to preserve evidence." *Martin*, 2012 IL 113270, ¶ 31.

The Seventh Circuit found one such example of a voluntary undertaking in *Schaefer*, where a bar fell and struck the plaintiff on the head while he was assembling scaffolding. 839 F.3d at 602–03. Immediately after the accident, the safety manager of Dynegy, the company that

had hired the plaintiff's employer to perform the scaffolding work, asked another individual to retrieve the bar. *Id.* Dynegy's safety manager then stored the bar in his office. *Id.* at 603. Roughly three years later, when the plaintiff sought to examine the bar as part of discovery in the litigation, the bar had been lost. *Id.* The plaintiff eventually brought a spoliation claim against Dynegy in connection with the lost bar. *Id.* at 603–04, 609. The *Schaefer* court found that Dynegy had "voluntarily assumed a duty to preserve the bar" because it "took affirmative steps to take possession of the bar, and to save it for potential litigation." *Id.* at 610. Specifically, Dynegy knew the bar injured the plaintiff, retrieved the bar and stored it "so that 'there wasn't any issue later,'" and recognized the potential importance of the bar to a case brought by the plaintiff. *Id.*

As in *Schaefer*, the operative complaint contains allegations reflecting affirmative steps to voluntarily assume a duty to preserve the December 17 Video. Littlejohn knew Williamson had injured J.D., and after reviewing the December 17 Video, Littlejohn recognized that the video was material evidence relevant to potential investigations or legal proceedings related to Williamson's attack on J.D., similar to Dynegy's recognition of the bar's potential importance to a case brought by the plaintiff in *Schaefer*. Littlejohn then segregated and stored the video so it could be used in potential DCFS and criminal investigations, like Dynegy retrieved and stored the bar to "so that 'there wasn't any issue later.'" *Id.* Therefore, the Court concludes that Black has sufficiently alleged a voluntary undertaking to preserve the December 17 Video as well.

Defendants try to distinguish *Schaefer* on this issue, but their attempts are not convincing. Defendants argue that they did not recognize the potential importance of the December 17 Video to Black's case and that they did not save the video for potential litigation. Doc. 73 at 6. Maybe so, but Black has alleged otherwise. She has alleged that Littlejohn segregated and stored the

11

December 17 Video because she recognized that it was "material evidence" that was relevant to "a potential lawsuit," Doc. 69 ¶ 123, which shows Littlejohn's recognition of the December 17 Video's importance to potential litigation brought on behalf of J.D. and actions undertaken to segregate and save the video on that basis. Defendants also contend that they "did not take affirmative steps to take possession of the video." Doc. 73 at 6. But Defendants did not do so only because the Board already had the video in its possession in the first instance. Doc. 69 ¶ 128 ("The video cameras and recorded camera footage were owned and possessed by [the Board] at all relevant times."). The Court does not believe that the fact that a party already possesses certain evidence precludes it from voluntarily undertaking the duty to preserve that evidence through other affirmative steps—such as Littlejohn's segregation and storage here—and Defendants do not cite any authority suggesting this is the case. Thus, Black has sufficiently alleged a voluntary undertaking that gave rise to a duty to preserve the December 17 Video.

        **C.**        **Duty of Whitehead, Ellis, Ryan, and Green to Preserve Evidence**

With respect to a duty to preserve evidence, Defendants finally argue that Black has failed to allege that Whitehead, Ellis, Ryan, and Green had a duty to preserve the December 17 Video because she does not allege that they had any involvement with the December 17 attack. Black responds that every Individual Defendant "had an interest in destroying the video" and that Defendants' argument asks the Court to improperly resolve questions of fact by deciding whether Whitehead, Ellis, Ryan, and Green viewed or destroyed the video. Doc. 72 at 10–11.

Black's contention misses the mark. The Court does not need to resolve questions of fact to determine whether she has sufficiently alleged that these Individual Defendants had a duty to preserve evidence. Even if Whitehead, Ellis, Ryan, and Green all viewed the December 17 Video (as Black alleges) and then collectively destroyed the video as a group, Black would not

have a spoliation claim against any of them unless she first showed that each individual had a duty to preserve the December 17 Video. And a relationship by "agreement, contract, statute, special circumstance, or voluntary undertaking," is necessary to establish that duty. *Schaefer*, 839 F.3d at 609; *Dardeen*, 213 Ill. 2d at 336. Yet the only factual allegations that show the required relationship involve *Littlejohn*'s segregation and storage of the December 17 Video and her motivations for doing so. Black does not explain, and the Court does not see, how these allegations regarding Littlejohn show that Whitehead, Ellis, Ryan, and Green also had the relationship necessary to owe a duty to preserve the December 17 Video. Accordingly, Black's second amended complaint does not adequately allege that Whitehead, Ellis, Ryan, or Green had a duty to preserve the December 17 Video.

## CONCLUSION

For the foregoing reasons, the Court denies Defendants' October 3, 2020 motion to dismiss [52] as moot and grants Defendants' December 9, 2020 motion to dismiss [70]. The Court dismisses Black's spoliation claim (Count XIII) against all Defendants without prejudice. Black has twenty-one days to amend her spoliation claim if she can do so in accordance with this opinion and Federal Rule of Civil Procedure 11.

Dated: March 8, 2021

                                                    SARA L. ELLIS
                                                    United States District Judge