## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| TEIRRA BLACK, as parent and next friend of J.D., a minor, | ) ) ) | |
| | ) | Case No. 19 CV 2585 |
| Plaintiff, | ) ) | |
| | ) | Judge Sara L. Ellis |
| vs. | ) ) | |
| TAMARA LITTLEJOHN, RENEE RYAN, LORIE GREEN, YOLANDA WHITEHEAD, CHERJUAN WILLAMSON, CAROLINE ELLIS, JAMES POWELL, JULIA VALLEZ, and the BOARD OF EDUCATION OF THE CITY OF CHICAGO, | ) ) ) ) ) ) | JURY DEMAND |
| Defendants. | | |

### THIRD AMENDED COMPLAINT

**NOW COMES** the Plaintiff, Teirra Black, as parent and next friend of minor child J.D., through her counsel Erickson & Oppenheimer, Ltd., complaining against the Defendants, Tamara Littlejohn, Renee Ryan, Lorie Green, Ms. Williamson, Ms. Whitehead, Caroline Ellis, James Powell, and Julia Vallez, individually, and the Board of Education of the City of Chicago, as follows:

### INTRODUCTION

1.      On February 18, 2019, 11-year-old 4th grade special-needs student J.D. attempted to take his own life to avoid yet another horrific day of bullying at Carter G. Woodson Elementary School. With his and his mother's continued pleas for relief to teachers and administrators ignored, J.D. saw no other way to stop the pain than to go into his bedroom, close the door, tie a bed sheet around his neck and hang himself on a coat hook. His suicide attempt was the result of over a year of chronic bullying and violent conduct at the hands of teachers and students at Evers Elementary and then Woodson Elementary. J.D.'s act of ultimate desperation has resulted in tragic consequences for him and his family as he remains hospitalized and ventilator dependent after suffering severe and permanent anoxic brain injury and chronic respiratory failure.

2.      J.D.'s suicide attempt followed the failure by school and Board officials to take any action to remedy the continuing bullying despite Plaintiff's repeated complaints to teachers, Woodson Elementary School principal Tamara Littlejohn, Medgar Evers Elementary School principal Caroline Ellis, the Board of Education of the City of Chicago and the Illinois State Board of Education. Instead of protecting J.D., officials at Woodson Elementary, Evers Elementary, and the Board simply ignored his mother's desperate pleas to protect her young son.

3.      The shocking conduct and deliberate indifference perpetrated in this case by CPS teachers and officials were not limited to J.D. Violent attacks and deliberate indifference by CPS teachers and administrators towards both special needs students and non-special needs students at Woodson and other Chicago public schools are not uncommon. Prior to J.D.'s suicide attempt, incidents of violence and aggression against special needs children occurred at Evers Elementary, Woodson Elementary, and the South Shore Fine Arts Academy. J.D. was the victim of teacher bullying and physical abuse at Evers Elementary before seeking refuge at Woodson. On June 21, 2018, Woodson Elementary special needs teacher Nakita Brown plead guilty to the criminal charge of battery for strangling a 9-year-old Woodson special needs student and dragging him headfirst down a flight of stairs. On or about November 13, 2018, Dean of Students at South Shore Fine Arts Academy, Christopher Thomas was arrested for Aggravated Battery to a Child for strangling a 9-year-old special needs student at South Shore Fine Arts Academy. Despite knowledge of this pattern of aggressive behavior and neglect, Defendant Board, Defendant Principal Littlejohn, and Defendant Principal Ellis failed to take any adequate action to train or supervise its employees in order to prevent incidents of aggressive behavior and neglect, like those which led to J.D.'s suicide attempt.

## JURISDICTION AND VENUE

4.     The jurisdiction of this Court is invoked pursuant to the Civil Rights Act, 42 U.S.C. §§ 1983 and 1988; 28 U.S.C. §§ 1331 and 1343(a); the Constitution of the United States, Title II of the Americans with Disabilities Act (ADA), §504 of the Rehabilitation Act and the Individuals with Disabilities Education Act, § 615(f)(3)(E)(ii), 20 U.S.C.A. § 1415(f)(3)(E)(ii); 34 C.F.R. § 300.513(a)(2); and pendent jurisdiction as provided under 28 U.S.C. § 1367(a).

5.     Venue is proper under 28 U.S.C. Section 1391 (b). All of the parties reside in this judicial district and the events described herein all occurred within this district.

## THE PARTIES

6.     At the time of the filing of the initial complaint in this action, J.D. was an 11-year-old boy who, due to a diagnosed learning disability, was a special education student at Woodson Elementary School and Evers Elementary at all relevant times. J.D. is Black and resides in Chicago, Illinois.

7.     Plaintiff Teirra Black is the mother of J.D. She resides in Chicago, Illinois.

8.     On information and belief, Defendant Yolanda Whitehead was at all relevant times a teacher at Evers Elementary School in the City of Chicago and an employee and agent of the Board of Education of the City of Chicago (hereinafter "Board") acting within her scope of employment and under color of law.

9.     On information and belief, Defendant James Powell was at all relevant times a teacher at Evers Elementary School in the City of Chicago and an employee and agent of the Board of Education of the City of Chicago (hereinafter "Board") acting within his scope of employment and under color of law.

10.     On information and belief, Defendant Caroline Ellis was at all relevant times the principal at Evers Elementary School in the City of Chicago and an employee and agent of the Board acting within her scope of her employment and under color of law.

11.     On information and belief, Defendant Julia Vallez was at all relevant times a teacher atEvers Elementary School in the City of Chicago and an employee and agent of the Board acting within the scope of her employment and under color of law.

12.     On information and belief, Defendant Lorie Green was at all relevant times a teacher at Woodson Elementary School in the City of Chicago and an employee and agent of the Board acting within the scope of her employment and under color of law.

13.     On information and belief, the Defendant Cherjuan Williamson was at all relevant timesa teacher at Woodson Elementary School in the City of Chicago and an employee and agent of the Board acting within the scope of her employment and under color of law.

14.     On information and belief, the Defendant Renee Ryan was at all relevant times a teacher at Woodson Elementary School in the City of Chicago and an employee and agent of the Board acting within the scope of her employment and under color of law.

15.     On information and belief, the Defendant Tamara Littlejohn was at all relevant times the principal at Woodson Elementary School in the City of Chicago and an employee and agent of the Board acting within the scope of her employment and under colorof law.

16.     Defendant Board is a school system in Chicago, Illinois in charge of the management and operation of Woodson Elementary School located at or about 4414 S. Evans Ave. in Chicago, Illinois. The Board was at all relevant times the employer of Defendants Littlejohn, Green, Ryan, Williamson, Whitehead, Ellis, Vallez, and Powell.

## **FACTS**

17. On February 18, 2019, J.A.D., J.D.'s younger sister, found her brother J.D. unresponsive and hanging from a coat hook with a sheet tied around his neck.

18. In the year and months preceding J.D.'s suicide attempt, he was the victim of physical violence, psychological abuse, bullying, harassment, and aggressive behavior at Evers and Woodson Elementary schools by both teachers and students.

19. J.D. was repeatedly called derogatory names by teachers and students. He was repeatedly called "stupid," "dumb," and "retarded" and teachers joked that he would end up at a facility for students with mental disabilities.

20. Evers Elementary teacher Defendant Whitehead called him "dirty," "stupid," "nappy-headed," and asked him if his "brillo hair was the reason he couldn't read." Ms. Whitehead made the comments in front of the class who would laugh aloud at J.D.

21. In or about November 2017, Ms. Whitehead hit J.D., causing him injury. Plaintiff Teirra Black called police and filed a police report regarding the criminal conduct of Ms. Whitehead.

22. In addition to the incident referenced in paragraph 21, at other times during the 2017-2018 school year, Ms. Whitehead used unreasonable and excessive force against J.D., including without limitation yanking on J.D.'s shirt collar hard enough that she caused his body to move and striking him on the cheek with her hand hard enough that she caused J.D.'s body to move and him to begin crying.

23. During the 2017-2018 school year, Defendant Whitehead engaged in a practice of repeatedly isolating J.D. by putting him out of the classroom.

24. On at least one occasion during the 2017-2018 school year, when J.D. asked for help with schoolwork or learning concepts, Defendant Whitehead waved him off and refused to help.

25. During the 2017-2018 school year, despite her knowledge that J.D. had been physically attacked by another student in the lunchroom, Defendant Whitehead did not take

any action to intervene or any action to adequately address the incident through student discipline or notifications to supervisors.

26. During the 2017-2018 school year, Defendant Vallez intentionally humiliated J.D. by calling him stupid and retarded.

27. During the 2017-2018 school year, Defendant Vallez intentionally humiliated J.D. by making him read aloud to the class knowing that J.D. could not read the content she asked him to read. As a result of this, J.D. was teased and bullied by other students for his inability to read.

28. During the 2017-2018 school year, Defendant Vallez allowed other students to bully and harass J.D. without intervening in any manner to prevent it from occurring.

29. During J.D.'s 2017-2018 school year at Evers, Security Officer Talmadge Sansom used unreasonable and excessive force against J.D., including yanking on his J.D.'s shirt collar and pulling on his ear.

30. During J.D.'s 2017-2018 school year at Evers, Officer Sansom also engaged in a conversation with other Evers staff in public areas of the school in which they referred to J.D. and J.A.D. as "dirty" and made derogatory comments about Plaintiff Black's sexuality and home life.

31. During J.D.'s 2017-2018 school year at Evers, Officer Sansom called J.D. "dumb" and "stupid."

32. During J.D.'s 2017-2018 school year at Evers, despite his knowledge that J.D. was being physically attacked by another student in the lunchroom, Officer Sansom stood by and failed to intervene despite having a reasonable opportunity to do so. Officer Sansom also failed to take action to adequately address the incident through student discipline or notifications to supervisors.

33. Teachers and staff, including those named here as Defendants, regularly called J.D. names in the presence of Evers students and parents of other Evers students.

34.     Teachers at Evers, including without limitation Defendant Powell, targeted J.D. because of his disability, making fun of J.D.'s reading ability and taunting him by telling him that he could not read.

35.     Teachers at Evers, including without limitation a teacher named Ms. Boerner, gossiped amongst themselves and in a derogatory manner about J.D.'s disability and supposed inability to read.

36.     Black complained to Evers school officials about the actions alleged in paragraphs 34 and 35, and they failed to adequately address her complaints.

37.     Students regularly called J.D. names and referred to him in a derogatory manner, including by saying that he stank and calling him "retarded", "nappy headed", and "slow" or the like. Teachers and staff, including those named here as Defendants, failed to intervene or respond appropriately despite either being present for these incidents or becoming aware of such incidents.

38.     Students at Evers engaged in physical violence against J.D. on and around school property, including attacking him in the lunchroom, bathroom, and outside on or near school grounds. Teachers and staff, including those named here as Defendants, failed to intervene or respond appropriately despite either being present for these incidents or becoming aware of such incidents.

39.     On one such occasion of student violence against J.D. at Evers, Defendant Ellis witnessed a group of students "jump" and physically attack J.D. outside near school grounds after school let out for the day.

40.     Defendant Ellis did nothing to intervene in the attack despite having a reasonable opportunity to do so, nor did she take the appropriate disciplinary action against the students that she witnessed attack J.D. or make the appropriate parental notifications.

41.     Plaintiff Teirra Black complained of J.D.'s mistreatment at Evers to various school officials, including without limitation Defendant Ellis, as well as the Board. Defendants Ellis and Board failed to take adequate action.

42.     As a result of this continued abuse by teachers and students at Evers Elementary, Plaintiff Teirra Black sought relief by transferring J.D. to Woodson Elementary.

43.     In or about October of 2018, Defendant Renee Ryan grabbed J.D. by the back of his neck and struck him across the face.

44.     During the 2018-2019 school year, Defendant Ryan, a Caucasian female, had a practice of discriminating against Black children, treating White children differently and better than Black children.

45.     Defendant Ryan repeatedly, consistently, and regularly used racial slurs against J.D., calling him a "nigger" on multiple occasions.

46.     On at least one occasion, Defendant Ryan told J.D. that he was "a dirty little nigger" and that he "could grow a plant in his hair."

47.     Defendant Ryan repeatedly and regularly told J.D. he would never amount to anything and that he was stupid and dumb.

48.     Defendant Ryan repeatedly and regularly threatened to have J.D. admitted at Hartgrove, a behavioral health hospital.

49.     Defendant Ryan repeatedly and regularly isolated J.D. by expelling him from her room and leaving him in the hallway without appropriate supervision.

50.     In or about December of 2018, Defendant Ms. Williamson at Woodson Elementary punched, choked and shoved J.D.'s head against a wall, leaving marks on his chest and arms. These marks were shown to Defendant Littlejohn.

51.     In or about December 2018, a group of students physically attacked J.D. in class, resulting in bruises to his body. Despite the obvious trauma suffered by J.D. Defendant Littlejohn recklessly and deliberately withheld this event from Plaintiff Teirra Black.

52.     Defendants Green and Ryan at Woodson grabbed and scratched J.D. on at least

two occasions within the year prior to his attempted suicide without just cause or provocation.

53. Mr. Hill, a gym teacher at Woodson, punched J.D. in the stomach on at least one occasion during J.D.'sattendance at Woodson without just cause or provocation.

54. Due to the emotional and physical abuse suffered by J.D. while at school, Teirra Black repeatedly informed Defendant Ellis, Defendant Littlejohn, various school staff and administrators, the Board of Education of the City of Chicago and finally the Illinois Board of Education. Despite these repeated pleas for help, Defendant Littlejohn, Defendant Ellis and the Defendant Board failed to take any steps to protect J.D.

55. Defendant Principal Littlejohn's and Defendant Principal Ellis' indifference to J.D.'s plight and his mother's pleas were both deliberate and willful.

56. Defendant Littlejohn failed to take any steps to stop and prevent the bullying experienced by J.D. Nor did she as a mandated reporter take appropriate steps to comply with Illinois law which requires that mandated reporters report abuse by any caretaker to DCFS.

57. Defendant Ellis failed to take any steps to stop and prevent the bullying experienced by J.D. Nor did she as a mandated reporter take appropriate steps to comply with Illinois law which requires that mandated reporters report abuse by any caretaker to DCFS.

58. Defendant Board and Defendant Ellis were aware of the continuing bullying and harassment suffered by J.D. at Evers. Defendant Board and Defendant Ellis have known of the identity of the perpetrators of the harassment since that time and either took no corrective action or took insufficient action.

59. Defendant Board and Defendant Littlejohn were aware of the continuing bullying and harassment suffered by J.D. at Woodson for over a year prior to the suicide attempt. Defendant Board and Defendant Littlejohn have known of the identity of the perpetrators of the harassment since that time and either took no corrective action or took insufficient action.

60. The harassment, bullying, physical attacks, and aggressive behavior perpetrated upon J.D. were offensive, unwanted, and interfered with his educational environment and deprived him of the educational opportunities and benefits provided by Defendant Board.

61.     Other parents of Woodson and Evers students have also complained about bullying, harassment and administrator/teacher/staff abuse at the schools only to be met with inaction by school and Board officials. Those complaints include, but are not limited to the following:

62.     In 2015, the parent of a Woodson Elementary School student complained to Defendant Board of Education of the City of Chicago staff that his/her child had been bullied by other students since the first day of school, and although the parent repeatedly notified the school, the school took no action to rectify the problem. The child finally defended him/herself and was suspended as a result.

63.     In 2015, the parent of an autistic Woodson Elementary School student complained to Defendant Board of Education of the City of Chicago staff that his/her child was severely injured at school. The school did not notify the parent of the injury or provide the parent with an incident or injury report.

64.     In 2015, the parent of an autistic Woodson Elementary School student complained to Defendant Board of Education of the City of Chicago staff that he/she observed one child hit another child while chaperoning a field trip and the teacher stood by and did nothing in response.

65.     In 2015, the parent of an autistic Woodson Elementary School student complained to Defendant Board of Education of the City of Chicago staff that he/she was laughed at when he/she asked that his/her child be transferred out of Woodson Elementary School due to the hostile school environment and the school's misconduct.

66.     In 2015, the parent of a Woodson Elementary School student complained to Defendant Board of Education of the City of Chicago staff that he/she was afraid to speak out about various issues regarding the school environment and the staff, including but not limited to bullying in the form of his/her child being stabbed by other students with pencils and his/her child coming home with scratches and marks on his/her face.

67.     The same parent referenced in paragraph 66 complained to Defendant Board of

Education of the City of Chicago staff that there was no supervision in CPS' after-school program and that there was constant chaos.

68.     The same parent referenced in paragraphs 66 and 67 complained to Defendant Board of Education of the City of Chicago staff that he/she reported the bullying and other issues to Defendant Littlejohn but was "blown off."

69.     In 2015, the parent of a Woodson Elementary School student complained to Defendant Board of Education of the City of Chicago staff that his/her child was being bullied almost every day by other students by being kicked and picked on.

70.     The same parent referenced in paragraph 69 went to Woodson Elementary School on numerous occasions to meet with Defendant Littlejohn about her complaints of bullying, but Littlejohn did not meet with him/her and the school did nothing about her complaints.

71.     The same parent referenced in paragraphs 69 and 70 complained to Defendant Board of Education of the City of Chicago staff that he/she was not notified when the bullying occurred and his/her child cried almost every day because of the bullying.

72.     In 2016, the parent of a Woodson Elementary School student complained to Defendant Board of Education of the City of Chicago staff that his/her child was bullied by classmates by being strangled and the perpetrator was not punished for the conduct.

73.     In 2016, the parent of an Evers Elementary School student complained to Defendant Board of Education of the City of Chicago staff that his/her child was detained for an hour and ridiculed by a security guard in front of the child's peers, the teacher, the guidance counselor, and the janitor with the guard telling the student that the student's parents "obviously did not care about [him/her]" and that the student was constantly "pissing [the security guard] off."

74.     In 2016, the parent of an Evers Elementary School student complained to Defendant Board of Education of the City of Chicago staff that Defendant Ellis said that she would write her child up and put the write-up in her child's permanent file because the parent "complained too much about every little thing."

75.     In 2016, the parent of an Evers Elementary School student complained to Defendant Board of Education of the City of Chicago staff that the doors of the boy's restroom were removed at Evers Elementary School which made his/her child uncomfortable.

76.     In 2016, the parent of an Evers Elementary School student complained to Defendant Board of Education of the City of Chicago staff that Evers' students were thrown out of the school in the evening in the middle of the winter because they had not been invited to a basketball game, although the students thought they had been invited.

77.     In 2016, the parent of an Evers Elementary School student complained to Defendant Board of Education of the City of Chicago staff that his/her child was accused of being "disrespectful with her eyes" by Evers' staff.

78.     In 2016, the parent of an Evers Elementary School student complained to Defendant Board of Education of the City of Chicago staff that Evers' staff tells the students of single mothers that the children's fathers are indifferent.

79.     In 2016, the parent of an Evers Elementary School student complained to Defendant Board of Education of the City of Chicago staff that Defendant Ellis shouted at her when she complained about the school environment and an incident involving his/her child.

80.     In 2016, the parent of an Evers Elementary School student complained to Defendant Board of Education of the City of Chicago staff that her complaints about the Evers Elementary School and the staff would result in retaliation against his/her child. The parent expressed concern that a write-up would lessen his/her child's chances of being in one of the few coveted seats, in selected enrollment, or simply in a safe school.

81.     In 2016, the parent of an Evers Elementary School student complained to Defendant Board of Education of the City of Chicago staff that his/her child's grades declined dramatically because of the environment at Evers Elementary School and because of the Evers' staff ridiculing his/her child at school in front of the child's peers and other staff.

82.     In 2016, the parent of an Evers Elementary School student complained to Defendant Board of Education of the City of Chicago staff that his/her child would come home

crying because of the environment at Evers Elementary School and the Evers' staff ridiculing his/her child at school in front of the child's peers and other staff.

83.     In 2016, the parent of an Evers Elementary School student complained to Defendant Board of Education of the City of Chicago staff that he/she asked for a tutor for his/her child after the child's grades declined because of the school environment at Evers Elementary School and the ridicule his/her child was subjected to by Evers' staff. The school refused to provide one.

84.     In 2016, the parent of an Evers Elementary School student complained to Defendant Board of Education of the City of Chicago staff that his/her child was punished for failing to wear a uniform during spirit week when none of the child were required to wear a uniform.

85.     The same parent referenced in paragraph 84 complained to Defendant Board of Education of the City of Chicago staff that he/she was afraid to speak out about how his/her child was being mistreated and singled out at Evers Elementary School because the parent was afraid that Defendant Ellis would retaliate against him/her by further punishing his/her child without cause.

86.     The same parent referenced in paragraphs 84 and 85 complained to Defendant Board of Education of the City of Chicago staff that Defendant Ellis stated that she was going to "get [his/her children] out of the school one way or another."

87.     The same parent referenced in paragraphs 84, 85 and 86 repeatedly requested an IEP for his/her child and received no response to the request for months on end.

88.     In 2016, the parent of an Evers Elementary School student complained to Defendant Board of Education of the City of Chicago staff that that Ms. Black, a P.E. teacher at Evers Elementary School, did a body odor inspection during P.E. by making the children stand in a line with their arm out while she smelled each one of them.

89.     The same parent referenced in paragraph 88 complained to Defendant Board of Education of the City of Chicago staff that Defendant Ellis had a "heated" discussion about

the children's body odor in front of the entire class and instructed the classroom teacher to tell the children's parents to buy the children new uniforms.

90.    In 2016, the parent of an Evers Elementary School student complained to Defendant Board of Education of the City of Chicago staff that Defendant Ellis made his/her child remove a sweatshirt despite the child informing Defendant Ellis that he/she was cold and had eczema on his/her arms that embarrassed him/her. The student was suspended because he/she refused to remove the sweatshirt.

91.    In 2016, the parent of an Evers Elementary School student complained to Defendant Board of Education of the City of Chicago staff that his/her child informed the parent that another young lady in her class was made fun of by another student for giving off an offensive odor during her menstrual cycle and she began "acting differently" after that incident.

92.    The same parent referenced in paragraph 91 informed staff with the Board of Education of the City of Chicago that the school gives the students burlap bags to carry their feminineproducts but would not allow the students to bring purses to class.

93.    The same parent referenced in paragraphs 91 and 92 informed the Board that the female students did not want to carry the burlap bags because it embarrassed them as other students would then be aware that the female student was menstruating.

94.    The same parent referenced in paragraphs 91-93 informed the Board that Evers Elementary School gives its students limited bathroom breaks forcing the menstruating students to sit in their own blood for hours and hours on end.

95.    The same parent referenced in paragraphs 91-94 expressed concern that the school does not allow the students to bring water bottles to school, despite the fact that there were "recent findings" that questioned the safety of the water at the school.

96.    In 2016, the parent of a Woodson Elementary School student complained to Defendant Board of Education of the City of Chicago staff that his/her child was viciously attacked by other students, subjected to threats by other students, and was scared to go to

school.

97.     In 2017, the parent of a Woodson Elementary School student complained to Defendant Board of Education of the City of Chicago staff that his/her child's arm was broken at school and the school did not notify the parent of the incident.

98.     In 2018, the parent of an Evers Elementary School student complained to Defendant Board of Education of the City of Chicago staff that improper sexual conduct between students was known to have occurred in the school bathroom and the incident was "swept under the rug" and DCFS was not called as required.

99.     In 2018, the parent of an Evers Elementary School student complained to Defendant Board of Education of the City of Chicago staff that his/her child was being bullied at Evers Elementary School.

100.    In 2018, the parent of an Evers Elementary School student complained to Defendant Board of Education of the City of Chicago staff that another parent had repeatedly complained to the school about bullying and nothing was done to rectify the problem.

101.    The same parent referenced in paragraph 102 claimed that the student had a learning disability and an IEP and was admitted to Hartgrove, a behavioral health hospital, by the school to retaliate against the complaining parent.

102.    In 2018 or 2019, the parent of an Evers Elementary School student complained to Defendant Board of Education of the City of Chicago staff that Hartgrove was a "dumping ground for bullied students" and that the school's tactic is to make bullied children look like the offenders when they are not.

103.    In 2019, the parent of an Evers Elementary School student complained to Defendant Board of Education of the City of Chicago staff that Evers Elementary School staff intentionally marked his/her child absent from school when they were not absent from school.

104.    In 2019, the parent of an Evers Elementary School student complained to Defendant Board of Education of the City of Chicago staff that a student pushed another student down a flight of stairs.

105.    In 2019, the parent of a Metcalf Community Academy Elementary School student claimed that his/her child was bullied at school and stopped another bullied child from killing him/herself.

106.    In 2019, the parent of a Woodson Elementary School student complained to Defendant Board of Education of the City of Chicago staff that a Woodson staff member retaliated against the parent for reporting incidents of bullying and school misconduct by attempting to put his/her child in Hartgrove.

107.    The same parent referenced in paragraph 106 complained to Defendant Board of Education of the City of Chicago staff that CPS staff members tried to destroy video evidence that exonerated his/her child from wrongdoing at the school.

108.    The same parent referenced in paragraph 106 and 107 complained to Defendant Board of Education of the City of Chicago staff that he/she had reported Defendant Littlejohn to DCFS more than twice for misconduct.

109.    With regards to all the incidents noted in paragraphs 62-108, the Board was aware of repeated complaints about bullying and abuse against students by both other students and staff, but failed to take adequate action to address the complaints.

110.    Various studies have found a connection between bullying and suicide in young individuals. The phenomenon is sometimes colloquially referred to as "bullycide."

111.    These studies have concluded that bullying is a significant contributor to suicidal ideation.[1]

112.    Frequent physical assault is also linked to increased odds of suicidal ideation.[2]

113.    A review of cross-sectional and longitudinal findings showed "an increased risk of suicidal ideation and (or) suicide attempts associated with bullying behavior."[3]

---

[1] Suicidal ideation among suburban adolescents: The influence of school bullying and other mediating risk factors. J. Child Adolesc. Ment. Health, 2016 Oct; 28(3): 213-231.

[2] Associations of childhood bullying victimization with lifetime suicidal behaviors among new U.S. Army soldiers. Depress Anxiety, 2017 Apr 3.

[3] The Association of Suicide and Bullying in Childhood to Young Adulthood: A Review of Cross-Sectional and Longitudinal

114.    The Illinois General Assembly has found that a safe and civil school environment is necessary for students to learn and achieve and that bullying causes physical, psychological, and emotional harm to students and interferes with students' ability to learn and participate in school activities, and also that bullying has been linked to various forms of antisocial behavior. As a result, the Illinois legislature has enacted legislation regarding bullying prevention, codified in 105 ILCS 5/27-23.7.

115.    The Board also recognizes the adverse and potentially tragic consequences of bullying, having enacted an Anti-Bullying Policy that was in effect at the time of J.D.'s suicide attempt. Despite this written policy, the Board had a *de facto* policy in place that allowed bullying and harassing behavior to flourish in its schools as set forth herein.

116.    As a result of the foregoing, Plaintiff was injured.

### COUNT I—EQUAL PROTECTION (Section 1983)
### (on behalf of J.D. against all Defendants)

117.    Plaintiff hereby incorporates all previous paragraphs as though fully set forth herein.

118.    J.D. has a clearly established right of equal access to all benefits and privileges of a public education and a right to be free from offensive harassment in school.

119.    Defendants have, under color of law, deprived J.D. of the rights, privileges, and immunities afforded to him by the United States Constitution, including the right to equal protection under the Fourteenth Amendment.

120.    Defendants violated the equal protection rights of J.D. when they treated students who were victims of bullying and aggressive behavior by students and teachers differently than students who were in accidents at school. While students who experience accidents at school are given appropriate and adequate medical treatment, and their parents are informed of the incident, students who are victims of bullying and aggressive behavior are not protected,

Research Findings.

their medical needs are not taken seriously, and their parents are not informed of the incident or injury, thus depriving them of the ability to protect their children.

121.    Defendants violated the equal protection rights of J.D. when they acted with deliberate indifference to Plaintiff's complaints about the harassment and bullying of J.D. which was directed at him because of his disability. On information and belief, complaints regarding students who are not special education students are treated differently than complaints of behavior against special education students.

122.    Additionally, Defendant Ryan further violated the equal protection rights of J.D., who was a member of a protected class by virtue of his race, when she acted with discriminatory intent against him on the basis of his race and treated him differently and less favorably than similarly situated White students.

123.    The above actions and omissions by Defendants were deliberate and intentional and exhibit deliberate indifference to and/or reckless disregard for the constitutional rights of J.D., and other similarly situated students, all in violation of their constitutional rights.

124.    There is no rational basis in treating the aforementioned groups in paragraphs 122-123 differently.

125.    In the alternative, J.D. was a class of one: there was no rational basis to justify the unequal treatment he faced, regardless of his membership in a protected class.

126.    As a direct and proximate consequence of the Defendants' conduct, J.D. suffered damages, including without limitation violations of his constitutional rights, chronic respiratory failure, anoxic brain injury, emotional anxiety, fear, pain and suffering, and monetary expense.

**WHEREFORE**, the Plaintiff prays for judgment against the Defendants, jointly and severally, for an award of reasonable compensatory and punitive damages, plus attorneys' fees and costs, and such other and additional relief that this Court deems equitable and just.

### COUNT II—TITLE II OF THE ADA
**(On behalf of J.D. against Defendant Board)**

127. Plaintiff hereby incorporates all previous paragraphs as though fully set forth herein.

128. The actions of the Defendants as set forth hereto constitute a violation of the Americans with Disabilities Act (hereinafter "ADA"), 42 U.S.C. § 12131, *et seq.*

129. Due to the status of J.D. as special education students, J.D. is a "qualified individual with a disability" as defined in 42 U.S.C. § 12131.

130. Woodson Elementary School and Evers Elementary School, operated by Defendant Board, are "public entities" as defined in 42 U.S.C. § 12131(1) and receive federal financial assistance so as to be covered by the mandate of the ADA.

131. Woodson and Evers Elementary Schools provide a facility whose operation constitutes a program and services for ADA purposes.

132. Accordingly, pursuant to 42 U.S.C. § 12132, no qualified individual with a disability shall be denied the benefits of the services, programs, or activities of a public entity.

133. The harassment set forth herein was sufficiently severe and pervasive that it altered the conditions of J.D's education and created an abusive educational environment.

134. As set forth herein, the Defendants knew of the aggressive behavior experienced by J.D. and were deliberately indifferent to his experiences his right as a student with a disability.

135. As a direct and proximate consequence of the Defendant's conduct, J.D. suffered damages, including without limitation violations of his constitutional rights, anoxic brain injury, chronic respiratory failure, emotional anxiety, fear, pain and suffering, and monetary expense.

**WHEREFORE**, the Plaintiff prays for judgment against the Defendant for an award of reasonable compensatory and punitive damages, plus attorneys' fees and costs, and such other and additional relief that this Court deems equitable and just.

## COUNT III—SECTION 504 OF THE REHABILITATION ACT
### (On behalf of J.D. against Defendant Board)

136. Plaintiff hereby incorporates all previous paragraphs as though fully set forth

herein.

137.     The actions of the Defendant as set forth hereto constitute a violation of the Rehabilitation Act, 29 U.S.C. § 794.

138.     J.D. is an eligible disabled students and as such is entitled to a free appropriate public education from Defendant Board and an equal opportunity to benefit from the public services. 29 U.S.C. § 705(20)(B); 34 C.F.R. Part 104.

139.     Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794 and its implementing regulations, require that each state that receives disbursements, including the state's political subdivisions such as local school districts, must ensure all students with disabilities are given appropriate and necessary accommodations, pursuant to federal law and rules.  To the degree that a policy or practice hinders honest consideration of a disabled child's unique needs and fails to accommodate that child's disability and keep the student safe, it violates Section 504.

140.     Defendants' failure to ensure J.D.'s safety in an educational setting and allowance of a hostile learning environment contributed to violating the rights of J.D. under Section 504, as well as federal rules and regulations promulgated pursuant thereto.

141.     As set forth herein, the abuse directed at J.D. was directed at him because of his disabilities.

142.     The harassment set forth herein was sufficiently severe and pervasive that it altered the conditions of J.D.'s education and created an abusive education environment.

143.     As set forth herein, the Defendant knew of the aggressive behavior experienced by J.D. and was deliberately indifferent to his experiences and right as a student with disability. J.D. was denied his education and non-academic benefits and services by reason of his disabilities in violation of Section 504. 29 U.S.C. § 794(a).

144.     As a direct and proximate consequence of the Defendant's conduct, J.D. suffered damages, including without limitation violations of his constitutional rights, anoxic brain injury, chronic respiratory failure, emotional anxiety, fear, pain and suffering, and monetary

expense.

**WHEREFORE**, the Plaintiff prays for judgment against the Defendant for an award of reasonable compensatory and punitive damages, plus attorneys' fees and costs, and such other and additional relief that this Court deems equitable and just.

### COUNT IV—SUBSTANTIVE DUE PROCESS (Section 1983)
### (On behalf of J.D. against all Defendants)

145.     Plaintiff hereby incorporates all previous paragraphs as though fully set forth herein.

146.     That J.D. had a clearly established right to equal access to all benefits andprivileges of a public education and a right to be free from the illegal practices and policies setforth herein.

147.     Defendants have, under color of law, deprived J.D. of the rights, privileges, and immunities afforded to him by the United States Constitution, including the right to due process under the Fourteenth Amendment, and specifically the right to be free from affirmative actions directly increasing J.D.'s vulnerability or otherwise placing him in danger and taking away from Plaintiff her ability to protect him.

148.     Defendants acted with deliberate indifference when they ignored Plaintiff's complaints and put J.D.'s life at risk and caused him to suffer gravely before his suicide attempt. Defendants acted with deliberate indifference when they concealed from Plaintiff the danger J.D. was in at school.

149.     The actions of the Defendants, as described above, were arbitrary and capricious and shock the conscience.

**WHEREFORE**, the Plaintiff prays for judgment against the Defendants, jointly and severally, for an award of reasonable compensatory and punitive damages, plus attorneys' fees and costs, and such other and additional relief that this Court deems equitable and just.

### COUNT V—EXCESSIVE FORCE (Section 1983)
### (On behalf of J.D.  against Defendants Ryan, Green, Whitehead, and Williamson)

150.   Plaintiff hereby incorporates all previous paragraphs as though fully set forth herein.

151.   The actions of Defendants Ryan, Green, Whitehead, and Williamson as set forth hereto constitute excessive force against Plaintiff J.D., thus violating his rights under the United States Constitution and 42 U.S.C. Section 1983.

152.   Said actions of Defendant Ryan, Green, Whitehead, and Williamson were intentional willful and wanton and committed with reckless disregard for J.D.'s rights.

153.   Said actions of the Defendants were objectively unreasonable under the circumstances.

154.   As a direct and proximate consequence of the Defendants' conduct, J.D. suffered damages, including without limitation violations of his constitutional rights, anoxic brain injury, chronic respiratory failure, emotional anxiety, fear, pain and suffering, and monetary expense.

**WHEREFORE**, the Plaintiff prays for judgment against the Defendants for an award of reasonable compensatory and punitive damages, plus attorneys' fees and costs, and such other and additional relief that this Court deems equitable and just.

### COUNT VI— MONELL (Section 1983)
### (against Defendant Board)

155.   Plaintiff hereby incorporates all previous paragraphs as though fully set forth herein.

156.   At the time of the incidents giving rise to this complaint and for a period of time prior thereto, Defendant Board had notice of a widespread practice under which students, particularly special education students such as J.D., were routinely subjected to harassment, aggressive behavior or neglect by either employees or students. For instance:

   a. On March 1, 2016, 9-year-old special education student N.C. was physically attacked by his special education teacher, Nikita Brown. He was strangled in the classroom and then dragged by Brown headfirst down the stairs. The incident was

captured on video, and Brown was ultimately plead guilty to the battery as a result of her criminal, violent conduct. Prior to this incident, Littlejohn had received multiple complaints about Brown's aggressive behavior towards both students and staff including their explicit concerns that she posed a danger to their safety, but failed to take the necessary corrective action to address the situation. Nor did Littlejohn report the incident with Brown and N.C. to DCFS as required under the law.

b. On September 28, 2018, 9-year-old special education student M.S. was physically attacked and choked by Dean of Students Christopher Thomas at South Shore Fine Arts Academy. Criminal charges against Thomas are pending.

c. On November 5, 2018, 7-year-old special education student D.A., who has Down syndrome, wandered away from Woodson and walked into a nearby citizen's home. When the citizen returned D.A. to the school, school staff appeared unconcerned.

157. Defendant Board had *de facto* practices, policies, and procedures in place that failed to require or enforce the reporting of physical or verbal abuse of special education/disabled students by Board employees and students; failed to correctly train its personnel regarding disabilities and required accommodations; and failed to properly supervise and monitor employees and school areas such as classrooms.

158. Defendant Board had *de facto* practices, policies, and procedures in place whereby it failed to provide or ensure the appropriate implementation of an adequate policy to guide defendants, school officials, and teachers responding to bullying, violence, and student-on-student and teacher-on-student aggression such as what happened to students like J.D.

159. Defendant Board had *de facto* practices, policies, and procedures in place whereby it failed to adequately train and supervise defendants, school officials, and teachers in their

interactions with students, including without limitation how to respond to incidents like those experienced by students like J.D.

160. Defendant Board had *de facto* practices, policies, and procedures in place whereby it failed to conduct a meaningful investigation into the actions of Defendants and other school officials alleged to have committed misconduct, thus ratifying their actions as official policy and causing the Board to be liable for their constitutional violations.

161. Defendant Board had *de facto* practices, policies, and procedures in place whereby it failed to conduct meaningful investigations into allegations of bullying or aggressive behavior or to adequately discipline or reprimand the offenders and ensure an appropriate modification in the environment for victims of bullying.

162. Defendant Board's rules, regulations, customs, policies, practices, usages, procedures, inadequate training and supervision, and ratification of the Defendants' actions, were all inadequate and unreasonable and were the proximate cause of J.D.'s injuries and the moving force behind the constitutional deprivations suffered by J.D.

**WHEREFORE**, pursuant to *Monell v. N.Y. Dep't of Soc. Servs.,* 436 U.S. 658 (1978), Plaintiff demands judgment against Defendant Board of Education of the City of Chicago for an award of reasonable compensatory damages, plus attorney's fees and costs and any other relief this Court deems just.

## COUNT VII—WILLFUL AND WANTON SUPERVISION (state law claim)
### (on behalf of J.D. against Defendants Littlejohn, Ellis, and Board)

163. Plaintiff hereby incorporates all previous paragraphs as though fully set forth herein.

164. At all relevant times, the Board, Defendant Littlejohn and Defendant Ellis owed a duty to Plaintiff, including without limitation to:

    a. Provide for students' safety, which includes safeguarding students from harmful conduct that may be undertaken by teachers;

b. Exercise reasonable care in supervising employees to ensure that they did not pose a danger or create an unreasonable risk of harm to other individuals that they were heaving properly during their encounters with students and staff,

c. Provide students, including those with disabilities, a learning environment that is not hostile,

d. Properly address allegations of harassment and/or discrimination, and

e. Prevent discrimination on the basis of disability.

165. As set forth hereto, said actions of the Defendants were intentional, willful and wanton and committed with reckless disregard for Plaintiff's rights.

166. Said actions of the Defendants were objectively unreasonable under the circumstances.

167. As a direct and proximate consequence of the Defendants' conduct, the Plaintiff suffered damages, including without limitation violations of his constitutional rights, emotional anxiety, fear, pain and suffering, and monetary expense.

**WHEREFORE**, the Plaintiff prays for judgment against the Defendants, jointly and severally, for an award of reasonable compensatory and punitive damages, plus attorneys' fees and costs, and such other and additional relief that this Court deems equitable and just.

## COUNT VIII—INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (state law claim)
### (on behalf of J.D. and Plaintiff against all Defendants)

168. Plaintiff hereby incorporates all previous paragraphs as though fully set forth herein.

169. As set forth hereto, Defendants committed one or more of the following extreme and outrageous acts against J.D.:

a. Teacher-on-student verbal and physical abuse,

b. Refusal to stop and the encouragement of student-on-student harassment,

c. Refusal to stop teacher-on-student and student-on-student harassment after being notified of incidents by Plaintiff and asked by Plaintiff to intervene.

170. Defendants' extreme and outrageous conduct was done with the intent to cause severe emotional distress to Plaintiff or with reckless disregard of the high likelihood of causing severe emotional distress.

171. Defendants' extreme and outrageous conduct cause Plaintiff to suffer severe emotional distress.

172. As a direct and proximate consequence of the Defendants' conduct, J.D. suffered damages, including without limitation violations of his constitutional rights, emotional anxiety, fear, pain and suffering, and monetary expense.

**WHEREFORE**, the Plaintiff prays for judgment against the Defendants, jointly and severally, for an award of reasonable compensatory and punitive damages, plus costs, and such other and additional relief that this Court deems equitable and just.

## COUNT IX — BATTERY (state law claim)
## (on behalf of J.D. against Defendants Green, Ryan, Whitehead, and Williamson)

173. Plaintiff hereby incorporates all previous paragraphs as though fully set forth herein.

174. As set forth hereto, the Defendants Lorie Green, Renee Ryan, Ms. Whitehead, and Ms. Williamson offensively touched J.D. intentionally, with malice, andwithout justification or consent, thus constituting battery under Illinois law.

175. As a direct and proximate result of the Defendants' actions, J.D. suffered bodily harm.

**WHEREFORE**, the Plaintiff prays for judgment against the Defendants, jointly and severally, for an award of reasonable compensatory and punitive damages, plus costs, and such other and additional relief that this Court deems equitable and just.

## COUNT X—ILLINOIS HATE CRIME (state law claim)

**(on behalf of J.D. against Defendants Ryan, Green, Whitehead, and Williamson)**

176.     Plaintiff hereby incorporates all previous paragraphs as though fully set forth herein.

177.     "A person commits a hate crime when, by virtue of actual or perceived…. disability…of another individual or group of individuals, regardless of the existence of any other motivating factors, he commits assault, battery, aggravated assault, intimidation…or disorderly conduct…". 720 ILCS 5/12-7.1(a).

178.     As set forth herein, the verbal and physical abuse directed at J.D. was because of his disability.

179.     As a direct and proximate consequence of the Defendants' conduct, the Plaintiff suffered damages, including without limitation violations of his constitutional rights, emotional anxiety, fear, pain and suffering, and monetary expense.

**WHEREFORE**, the Plaintiff prays for judgment against the Defendants, jointly and severally, for an award of reasonable compensatory and punitive damages, plus costs, and such other and additional relief that this Court deems equitable and just.

## COUNT XI—INDEMNIFICATION

180.     Plaintiff hereby incorporates all previous paragraphs as though fully set forth herein.

181.     At all relevant times, Defendant Board was the employer of the individual Defendants.

182.     The individual Defendants committed the acts alleged above under the color of law and in the scope of their employment as employees of the Board.

183.     In Illinois, public entities are directed to pay for any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

184.    As a proximate cause of the unlawful acts of the individual Defendants, which occurred within the scope of their employment, J.D. was injured.

**WHEREFORE**, should any of the individual Defendants be found liable on one or more of the federal claims set forth above, Plaintiff demands, pursuant to 745 ILCS 10/9-102, that Defendant Board be found liable for any compensatory judgment Plaintiff obtains against said individual Defendant(s), plus attorneys' fees and costs awarded and such other and additional relief that this Court deems equitable and just.

## COUNT XII—*RESPONDEAT SUPERIOR*

185.    Plaintiff hereby incorporates all previous paragraphs as though fully set forth herein.

186.    In committing the acts alleged in the preceding paragraphs, the individual Defendants were agents of the Board and were acting at all relevant times within the scope of their employment and under color of law.

187.    Defendant Board is liable as principal for all torts committed by its agents.

**WHEREFORE**, should any of the individual Defendants be found liable on one or more of the state claims set forth above, Plaintiff demands that, pursuant to *respondeat superior*, Defendant Board be found liable for any compensatory judgment Plaintiff obtains against said Defendant(s), as well as costs awarded.

## JURY DEMAND

The Plaintiff requests a trial by jury.

## NOTICE OF ASSIGNMENT

Please be advised that all rights relating to attorneys' fees have been assigned to counsel.

Respectfully submitted,

/s/ Jon Erickson

Erickson & Oppenheimer, Ltd.
223 West Jackson Boulevard
Ste. 200

Chicago, IL 60606